168 F.3d 893
 27 Media L. Rep. 1577
 Stephen AMELKIN, Broadway Chiropractic; Dr. Brian
Christopher Fee; Stuart Lyon; Nicolas Baker; David
Kaplan; James W. Chambers; Sidney Hanish; Rhoda Daniels;
Thomas H. Watson; Kenneth W. Wall; James Bogard, doing
business as Bogard & Associates, Plaintiffs-Appellees,
City of Louisville, Division of Police, Plaintiff,
v.
Ann McCLURE, Document Custodian; Gary Rose, Commissioner of
Department of State Police; Ben Chandler,
Attorney General, Defendants-Appellants,
Justice Cabinet, Department of State Police,
Plaintiff/Counter Defendant-Appellant,
Jefferson County, Kentucky, Defendant.
 No. 96-5942.
 United States Court of Appeals,
Sixth Circuit.
 Argued April 24, 1998.
Decided Feb. 17, 1999.
Rehearing and Suggestion for Rehearing En Banc Denied April 30, 1999.
 
 Mary J. Lintner (briefed), Donald L. Cox (argued), Lynch, Cox, Gilman & Mahan, Louisville, KY, for Plaintiffs-Appellees.
 Denise M. Smith (briefed), Benesch, Friedlander, Coplan & Aronoff, Cincinnati, OH, Laurence J. Zielke (briefed), Pedley, Zielke, Gordinier, Olt & Pence, Louisville, KY, for Plaintiff-Appellant Justice Cabinet.
 Steve Durham, Office of the General Counsel, Corrections Cabinet, William B. Pettus, Asst. Atty. Gen. (argued and briefed), Office of the Attorney General, Civil & Environmental Law Division, Frankfort, KY, for Defendant-Appellant Ann McClure and Ben Chandler.
 Steve Durham, Office of the General Counsel, Corrections Cabinet, Lucy B. Richardson (argued and briefed), Commonwealth of Kentucky, Justice Cabinet, General Counsel, William B. Pettus, Asst. Atty. Gen., Office of the Attorney General, Civil & Environmental Law Division, Frankfort, KY, for Defendant-Appellant Gary Rose and Justice Cabinet.
 Before: SUHRHEINRICH, SILER, and GILMAN, Circuit Judges.
 GILMAN, J., delivered the opinion of the court, in which SUHRHEINRICH, J., joined. SILER, J. (pp. 902-03), delivered a separate opinion concurring in part and dissenting in part.
 OPINION
 GILMAN, Circuit Judge.
 
 
 1
 A number of attorneys and chiropractors, as well as the proposed publisher of a commercial newspaper to be called The Accidental Journal, filed suit to challenge two Kentucky statutes, one restricting the disbursement of accident reports and the other allowing the state custodian of nonexempt public documents to charge commercial users "a reasonable fee" for producing copies of the reports. The district court permanently enjoined the enforcement of both statutes, finding that they violated the plaintiffs' First Amendment right to freedom of expression. For the reasons set forth below, we AFFIRM the portion of the district court's injunction relating to the amendments restricting the disbursement of accident reports, but VACATE AND REMAND for further proceedings the portion of the district court's order enjoining the amendments that allow the charging of reasonable fees for copying nonexempt public documents.
 
 I. BACKGROUND
 
 2
 Until 1994, Kentucky Revised Statutes § 189.635(5) provided that "all accident reports filed with the Department of State Police ... shall remain confidential." Despite the all-encompassing nature of the statutory language, a Kentucky Attorney General's Opinion issued in 1989 determined that the privacy exemption under Kentucky's Open Records Law was "discretionary." This had the effect of making all accident reports accessible to the public. Accident reports soon became a prime source for attorneys and chiropractors in Kentucky to identify prospective clients. As one chiropractor noted: "In order to determine what potential patients would be in need of chiropractic services, I have routinely submitted open records requests to various law enforcement agencies in order to obtain copies of accident reports."
 
 
 3
 Such accident reports contain the name, address, and driver's license number of those involved in the accident, and a diagram and brief description of the accident itself. After procuring these reports, certain attorneys and chiropractors would use the information contained therein to contact victims and offer their services, often attaching the accompanying accident report to the solicitation letter. Plaintiff James Bogard has in the past made a business out of assisting these attorneys and chiropractors by supplying them with the accident reports that he has obtained from law enforcement agencies. Bogard also intends to publish a newspaper, The Accidental Journal, that will contain copies of accident reports and that will be marketed primarily to attorneys and chiropractors.
 
 
 4
 The efforts to solicit potential clients through the procurement and use of accident reports became so incessant that those involved in traffic accidents immediately began receiving large stacks of direct mail solicitations from various attorneys and chiropractors. A typical example of such a mailing is reproduced below:
 
 
 5
 Public records indicate you were involved in an automobile accident recently. You may have been injured at the time of the accident. Often times a person finds there was an injury a day or so after the accident. Sometimes a person is stunned or has a surge of adrenaline that masks the symptoms of injury at the time the accident report is made. If you find that you did suffer personal injury due to the automobile accident, I can help you.
 
 
 6
 For over thirty years I have been representing people like you against insurance companies. I have the knowledge, the expertise, and most of all, the practical wisdom to guide you.
 
 
 7
 You are not expected to know the usual or unusual methods that insurance representatives use on injured persons. Do not be misled, misinformed or fall prey to an easy settlement from the insurance company. KNOW YOUR LEGAL RIGHTS.
 
 
 8
 Protect yourself. Get information from a lawyer. You have one body and it has to serve you your whole life. Make sure you receive the right medical treatment you need.
 
 
 9
 Just as you expect your doctor to give the proper medical treatment, so should you have an attorney to see that your legal rights are protected. By going to an experienced lawyer you can have the peace of mind that you will be protected and your claim will be well represented.
 
 
 10
 Not long after the Attorney General's Opinion was issued in 1989, a public groundswell developed against the release of accident reports to attorneys and chiropractors. One editorial described the attorneys who used such accident reports as "greedy, money grubbing lawyers" who seemed "to prey on the misfortunes of others." Ky. Bench & Bar, Summer 1993, at 7. In addition to the solicitations tarnishing the image of the legal community in the eyes of the public, some who received a mailbox full of such letters grew concerned over their personal privacy and safety. One recipient of such direct mail solicitation related his experience as follows:
 
 
 11
 On April 1, 1993 I was involved in an automobile collision wherein my vehicle was struck in the rear. I was transported to the hospital and was treated for injuries for which I have now recovered.
 
 
 12
 Shortly after the collision I received via U.S. Mail the following:
 
 
 13
 1. Solicitation letter from Attorney [A] and a complimentary copy of the police report with his advertisement on the reverse side.
 
 
 14
 2. Solicitation letter from Attorney [B] and a complimentary copy of the police report.
 
 
 15
 3. Solicitation letter from Attorney [C].
 
 
 16
 4. Solicitation letter from Attorney [D].
 
 
 17
 I additionally received solicitations from various chiropractors but failed to retain that information since it was so voluminous.
 
 
 18
 Ms. Richardson, if it was my desire to engage the services of an attorney I would do so using my own resources to make such a selection. In addition, I feel that this is a direct infringement upon my right of privacy. It is my desire and constitutional right to maintain privacy. Publicly revealing my home address is unconscionable and unacceptable and a personal affront to my rights.
 
 
 19
 My occupation is such that it is mandatory that my home address remain confidential. The promulgation of same may place myself as well as my family in danger of physical harm.
 
 
 20
 (Emphasis in original).
 
 
 21
 In an attempt to protect accident victims from being hounded by unwanted solicitations from attorneys and chiropractors, the Kentucky general assembly amended § 189.635 and § 61.874 of the Kentucky Revised Statutes in 1994. The relevant text of the amended statutes is reproduced below:
 
 
 22
 189.635 VEHICLE ACCIDENT REPORTS BY OPERATORS LAW ENFORCEMENT OFFICERS AND AGENCIES--AVAILABILITY TO PARTIES TO ACCIDENT AND NEWS-GATHERING ORGANIZATIONS.
 
 
 23
 . . . . .
 
 
 24
 (5) All accident reports filed with the Department of State Police in compliance with subsection (4) above shall remain confidential except that the department may disclose the identity of a person involved in an accident when his identity is not otherwise known or when he denies his presence at an accident. All other accident reports required by this section, and the information contained in the reports, shall be confidential and exempt from public disclosure except when produced pursuant to a properly executed subpoena or court order, or except pursuant to subsection (6) of this section. These reports shall be made available only to the parties to the accident, the parents or guardians of a minor who is party to the accident, and the insurers of any party who is the subject of the report, or to the attorneys of the parties.
 
 
 25
 (6) The report shall be made available to a news-gathering organization, solely for the purpose of publishing or broadcasting the news. The news-gathering organization shall not use or distribute the report, or knowingly allow its use or distribution, for a commercial purpose other than the newsgathering organization's publication or broadcasting of the information in the report. A newspaper, periodical, or radio or television station shall not be held to have used or knowingly allowed the use of the report for a commercial purpose merely because of its publication or broadcast.
 
 
 26
 KY.REV.STAT. ANN, § 189.635 (Banks-Baldwin 1995).
 
 
 27
 61.874. ABSTRACTS, MEMORANDA, COPIES--AGENCY MAY PROSCRIBE FEE
 
 
 28
 . . . . .
 
 
 29
 (3) The public agency may prescribe a reasonable fee for making copies of nonexempt public records requested for use for noncommercial purposes which shall not exceed the actual cost of reproduction, including the costs of the media and any mechanical processing cost incurred by the public agency, but not including the cost of staff required....
 
 
 30
 (4)(a) Unless an enactment of the General Assembly prohibits the disclosure of public records to persons who intend to use them for commercial purposes, if copies of nonexempt public records are requested for commercial purposes, the public agency may establish a reasonable fee.
 
 
 31
 (b) The public agency from which copies of nonexempt public records are requested for a commercial purpose may require a certified statement from the requestor stating the commercial purpose for which they shall be used, and may require the requestor to enter into a contract with the agency. The contract shall permit use of the public records for the stated commercial purpose for a specified fee.
 
 
 32
 (c) The fee provided for in subsection (a) of this section may be based on one or both of the following: 1. Cost to the public agency of media, mechanical processing, and staff required to produce a copy of the public record or records; 2. Cost to the public agency of the creation, purchase, or other acquisition of the public records.
 
 
 33
 KY.REV.STAT. ANN, § 61.874 (Banks-Baldwin 1997).
 
 
 34
 Governor Brereton Jones later stated that he signed the amendments to Kentucky's Open Records Law to "provide [ ] a measure of protection to accident victims" by "prohibit[ing] distribution [of accident reports] for commercial purposes."
 
 
 35
 Almost immediately after passage, the plaintiffs filed suit against Ann McClure (a custodian of accident reports at a local state police post) and an assortment of other government officials, all in an effort to enjoin enforcement of the statutes. They claimed that the statutes infringe on their First Amendment right to freedom of expression. Following a lengthy hearing, the district court permanently enjoined the enforcement of both statutes, holding that they violated the First Amendment. This timely appeal followed.
 
 II. ANALYSIS
 A. The Challenge to § 189.635
 
 36
 The defendants contend that all § 189.635 does is limit the category of people who have access to accident reports. In the defendants' brief, they assert that the statute does not "even hint at ... or place unconstitutional conditions on the use of this accessed material by restricting speech related purposes." Because § 189.635 is purportedly a "pure denial of access statute," they claim that it is constitutional under the Supreme Court's decision in Houchins v. KQED, Inc., 438 U.S. 1, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978), where the Court noted that the First Amendment does not "guarantee ... a right of access to all sources of information within government control." Id. at 9, 98 S.Ct. 2588. Section 189.635, however, is not as benign as the defendants would have us believe.
 
 
 37
 Subsection 6 of § 189.635 clearly restricts a "news-gathering organization" from using or distributing any accident report that it obtains for a commercial purpose, other than to publish or broadcast the information in a news report. It is this content-based restriction with respect to news organizations which makes § 189.635 fatally flawed.
 
 
 38
 In Central Hudson Gas & Electric Corp. v. Public Service Commission of New York, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), the Supreme Court articulated a four-part test to analyze the constitutionality of government regulations limiting commercial speech:
 
 
 39
 At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.
 
 
 40
 Id. at 566, 100 S.Ct. 2343 (Enumeration added).
 
 1. Protected Expression
 
 41
 The parties agree that the speech at issue is neither illegal nor misleading under the first prong of the Central Hudson test. Rather, their dispute centers around the remaining three prongs.
 
 2. Governmental Interest
 
 42
 The defendants argue that the governmental interest behind § 189.635 is to protect accident victims' privacy and safety by keeping the personal information contained in such reports out of the hands of the general public. We are persuaded that such an interest is substantial, as evidenced by the fact that a number of other courts that have considered similar statutes have reached the same conclusion. See Florida Bar v. Went For It, Inc., 515 U.S. 618, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995); Lanphere & Urbaniak v. Colorado, 21 F.3d 1508 (10th Cir.1994); Speer v. Miller, 864 F.Supp. 1294 (N.D.Ga.1994); cf. Kallstrom v. City of Columbus, 136 F.3d 1055 (6th Cir.1998) (holding that disclosure of information contained in undercover officers' personnel files violated the officers' privacy interest in preserving their lives and personal security); United Reporting Publishing Corp. v. California Highway Patrol, 146 F.3d 1133 (9th Cir.1998) (holding that government's asserted interest in protecting the privacy of arrestees is substantial under Central Hudson ).
 
 
 43
 As the Supreme Court has noted: "The State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society." Carey v. Brown, 447 U.S. 455, 471, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980). Indeed, "[the Supreme Court's] precedents ... leave no room for doubt that the protection of potential clients' privacy is a substantial state interest." Went For It, 515 U.S. at 625, 115 S.Ct. 2371 (internal quotation marks omitted). The Court has also "noted that 'a special benefit of the privacy all citizens enjoy within their own walls, which the State may legislate to protect, is an ability to avoid intrusions.' " Id. (quoting Frisby v. Schultz, 487 U.S. 474, 484-85, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988)). From this abundance of legal authority, we hold that the government's asserted interest in protecting the privacy and safety of accident victims is substantial and, hence, meets the second prong of the Central Hudson test.
 
 3. Advancement of Governmental Interest
 
 44
 Concluding that the government's asserted interest is substantial, however, does not end our inquiry, but requires that we examine the next prong of the Central Hudson test--whether the challenged governmental regulation "advances the Government's interest 'in a direct and material way.' " Rubin v. Coors Brewing, 514 U.S. 476, 487, 115 S.Ct. 1585, 131 L.Ed.2d 532 (1995) (quoting Edenfield v. Fane, 507 U.S. 761, 767, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993)). The defendants, as the "party seeking to uphold [the] restriction on commercial speech," have the burden of justifying the restriction. Bolger v. Youngs Drug Products Corp., 463 U.S. 60, 71 n. 20, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983). This burden may not be satisfied by "mere speculation or conjecture." Edenfield, 507 U.S. at 770, 113 S.Ct. 1792. Instead, " 'a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree.' " Coors Brewing, 514 U.S. at 487, 115 S.Ct. 1585 (quoting Edenfield, 507 U.S. at 770, 113 S.Ct. 1792). When the regulation only provides ineffective or remote support for the government's purpose, it does not withstand constitutional scrutiny. See Edenfield, 507 U.S. at 770, 113 S.Ct. 1792.
 
 
 45
 The district court found that the amended statute does not directly and materially advance the government's interest in protecting the privacy and safety of accident victims. Specifically, the district court noted that "the fact that this information is available to the media and insurers is sufficient to warrant the holding that the privacy interest which the State asserts in defense of the statute is not protected by the restriction of the public records to newspapers and insurers." Amelkin v. Commissioner, 936 F.Supp. 428, 431 (W.D.Ky.1996). The defendants claim that the district court erred in so finding, arguing that a prohibition against the release of accident victims information (1) reduces the opportunity for criminals to misuse such information, either by stalking accident victims or by using the information contained therein to defraud such victims, and (2) serves to prevent the direct and unnecessary intrusion into the private lives and homes of accident victims and their families.
 
 
 46
 As to the first argument, the defendants have provided no evidence, aside from general averments contained in affidavits, that would support the contention that criminals would use accident reports to harass or further harm accident victims if they had access to the information contained in such reports. The personal information contained in accident reports was in fact available to the general public prior to the amendment of § 189.635, without any evidence of adverse consequences. For example, the same type of personal information found in accident reports could also be gathered by requesting from the department of motor vehicles information contained on a driver's license. This asserted harm, therefore, appears to be nothing more than the type of speculation and conjecture that is insufficient to sustain a restriction on commercial speech. See Coors Brewing, 514 U.S. at 487, 115 S.Ct. 1585. Because the defendants have failed to sustain their burden of proving that this harm is real, we need not consider whether the restriction will alleviate the asserted harm to a material degree. See id.
 
 
 47
 Unlike the defendants' first argument, their second argument in support of the statute--to prevent the direct and unnecessary intrusion into the private lives and homes of accident victims--is at least directly and materially linked to the restriction on access to accident reports. The problem, however, is that the statutory exceptions serve to neutralize the government's attempts to protect the privacy of accident victims. The district court in fact rejected the contention that § 189.635 materially advances the governmental interest in protecting the privacy of accident victims on the very grounds that such an interest is undermined by the exceptions provided for in the statute, particularly the provision allowing accident reports to be obtained and published by news-gathering organizations. See Amelkin, 936 F.Supp. at 431. In this respect, § 189.635 "does not restrict all (or probably even most) possible invasions of a person's privacy." United Reporting, 146 F.3d at 1139. The fact that newspapers may inspect and report on the information contained in accident reports belies the defendants' claim that the statute is actually intended to protect the privacy interests of accident victims. See Amelkin, 936 F.Supp. at 431.
 
 
 48
 The exception to § 189.635(5) for news-gathering organizations precludes the statute from directly and materially advancing the government's purported privacy interest. See Valley Broadcasting Co. v. United States, 107 F.3d 1328, 1334 (9th Cir.1997). Our conclusion is reinforced by the holding in Coors Brewing, 514 U.S. at 476, 115 S.Ct. 1585, where the Supreme Court determined that 27 U.S.C. § 205(e)(2), which prohibited brewers from disclosing the alcohol content of beer on their labels, violated the First Amendment. The Court held that the government's asserted interest in avoiding alcohol "strength wars" was substantial, but that § 205(e)(2) did not directly advance that interest "because of the overall irrationality of the Government's regulatory scheme." Id. at 488, 115 S.Ct. 1585. The regulatory scheme was irrational because of the numerous exceptions Congress appended to § 205(e)(2), including an exception for wines and distilled spirits, which were allowed to list alcohol content on their labels, and the failure to extend the ban on disclosing alcohol content to advertisements. See id. As the Court observed, "[t]here is little chance that [the regulation at issue] can directly and materially advance its aim, while other provisions of the same act directly undermine and counteract its effects." Id. at 489, 115 S.Ct. 1585.
 
 
 49
 For the same reasons, the exception to § 189.635(5) for news-gathering organizations renders the statute unconstitutional under the First Amendment. There is no rational basis for a statute which purports to advance the governmental interest in protecting the privacy of accident victims to allow their names and addresses to be published or broadcast to the general public. "Having one's name ... and address printed in the local paper is a far greater affront to privacy than receiving a letter from an attorney ... eager to help one overcome his present difficulties (for a fee, naturally)." United Reporting, 146 F.3d at 1140. The exceptions to § 189.635 "undermine and counteract" the asserted governmental interest in preserving privacy just as surely as did the exceptions in Coors Brewing. We therefore conclude that § 189.635(6) fails to satisfy the third prong of Central Hudson.
 
 
 50
 The defendants, however, seek to re-characterize the nature of the affront to accident victims' privacy as being the receipt, often voluminous, of direct mail solicitations from lawyers and chiropractors. But the invasion of an accident victim's privacy does not stem from the victim's mailbox being stuffed by direct mail solicitations from attorneys and chiropractors. If such were the case, then most of us would feel no sense of privacy because of the seemingly unstoppable torrent of junk mail which flows into most citizens' mailboxes. Instead, the true affront to a person's privacy comes from the "solicitor's discovery of the information [contained in the accident report] that led to the solicitation." United Reporting, 146 F.3d at 1139; see Shapero v. Kentucky Bar Ass'n, 486 U.S. 466, 476, 108 S.Ct. 1916, 100 L.Ed.2d 475 (1988) ("The [privacy] invasion, if any, occurs when the lawyer discovers the recipient's legal affairs, not when he confronts the recipient with the discovery [through a targeted direct-mail solicitation].").
 
 
 51
 As one district court has noted: "It is hard to see how direct mail solicitations invade the privacy of [individuals]. If they don't like the solicitation, they can simply throw it away." United Reporting Publishing Corp. v. Lungren, 946 F.Supp. 822, 828 (S.D.Cal.1996); see also Bolger, 463 U.S. at 72, 103 S.Ct. 2875 ("Consequently, the short, though regular journey from the mail box to the trash can ... is an acceptable burden, at least so far as the Constitution is concerned." (internal quotation marks omitted)). Instead, the true motivation behind § 189.635 appears to be directed at preventing attorneys and chiropractors from looking at accident reports, with the secondary consequence that direct mail solicitation practices would be curtailed.
 
 
 52
 The defendants also claim that the district court erred in not following the Tenth Circuit's decision in Lanphere & Urbaniak, 21 F.3d at 1508, which reviewed a similar statute. In that case, the Tenth Circuit held that it had "no trouble" finding that the state's interest in protecting privacy was directly advanced by the statute in question. Id. at 1515. The Tenth Circuit failed, however, to provide any reasoning for why it had "no trouble" reaching this conclusion. Instead, the court simply asserted:
 
 
 53
 The State's interest in protecting privacy is directly advanced when the State no longer allows access to the names and addresses of those charged with misdemeanor traffic violations and [Driving Under the Influence]. Further, refusing access to such information reasonably directly advances the State's interest in lessening the danger of overreaching by solicitors where potential solicitation recipients may be particularly vulnerable.
 
 
 54
 Id.
 
 
 55
 We agree with the district court's decision not to follow Lanphere. As the Ninth Circuit recently observed: "Lanphere fails to take into account the Supreme Court's decision in Edenfield, 507 U.S. at 767, 113 S.Ct. 1792 (holding that the third prong of Central Hudson requires the challenged regulation to advance the state interests 'in a direct and material way,' not merely a direct or 'reasonably' direct way), and is in conflict with Coors Brewing, 514 U.S. 476, 115 S.Ct. 1585." United Reporting, 146 F.3d at 1139 n. 4.
 
 
 56
 Finally, the defendants claim that the statute still advances the interest of protecting the privacy of accident victims because state agencies are required to redact certain personal and private information from any accident report that is provided. The defendants rely on Kentucky Revised Statutes § 61.878(1)(a), which is part of Kentucky's Open Records Law. Nothing in this statute, however, requires that state agencies redact such information from accident reports. Section 61.878(1)(a) only provides that "public records" are excluded from the provisions of Kentucky's Open Records Law if they contain "information of a personal nature" and its release would cause "a clearly unwarranted invasion of personal privacy." There is nothing in the statutory language compelling the custodian of accident records to redact such personal information before providing the report to news-gathering organizations. That a custodian may choose to do so is obviously not sufficient to cure a constitutional infirmity.
 
 
 57
 4. Restriction on Commercial Speech More Extensive Than Necessary
 
 
 58
 Because we conclude that § 189.635(6) does not directly advance the asserted governmental interest, there is no need for us to consider the final prong of Central Hudson(whether the restriction on commercial speech is more extensive than necessary to advance such interest).
 
 B. Severability
 
 59
 Having concluded that § 189.635(6) violates the First Amendment, we must next determine whether that portion of the statute may be severed without requiring that § 189.635(5) be similarly struck down.
 
 
 60
 Kentucky's general severability statute, § 446.090, provides as follows:
 
 
 61
 It shall be considered that it is the intent of the General Assembly, in enacting any statute, that if any part of the statute be held unconstitutional the remaining parts shall remain in force, ... unless the remaining parts are so essentially and inseparably connected with and dependent upon the unconstitutional part that it is apparent that the General Assembly would not have enacted the remaining parts without the unconstitutional part, or unless the remaining parts, standing alone, are incomplete and incapable of being executed in accordance with the intent of the General Assembly.
 
 
 62
 KY.REV.STAT. ANN, § 446.090 (Banks-Baldwin 1993).
 
 
 63
 As noted earlier, the motivating purpose behind the passage of § 189.635(5)-(6) was apparently to protect the privacy of accident victims from having their accident reports inspected by attorneys and chiropractors who desire to solicit their business. Without § 189.635(6), news-gathering organizations would have no access at all to accident reports. Given the clear public interest in having a general awareness of accidents taking place within the community, we believe "it is apparent that the general assembly would not have enacted the remaining parts without the unconstitutional part." Ky.Rev.Stat. § 446.090. Because retaining § 189.635(5) alone would be contrary to the legislature's intent in passing the amendments to § 189.635(5)-(6), we find that the one cannot be severed from the other. Accordingly, § 189.635(5), given its inextricable links to § 189.635(6), must also fall.
 
 C. The Challenge to § 61.874
 
 64
 This particular case has made a number of trips to our court, each time resulting in it being remanded to the district court because of a procedural irregularity or other infirmity. Unfortunately, a portion of the district court's opinion in this appeal has a similar flaw--it fails to provide any findings of fact or conclusions of law with respect to the "as applied" challenge to § 61.874. The plaintiffs contend that the agency responsible for implementing § 61.874 has applied the "reasonable fee" provision in an arbitrary and discriminatory manner insofar as commercial users are concerned. Their brief alleges that "the Commonwealth increased the cost of the reports from 10cents per page to $40 per report for non-injury accidents; $90 per report for injury accidents; and $230 per report for fatal accident reports. The Commonwealth proposed to charge Appellee Lyon $17,650 for two weeks of reports, which previously would have cost him about $68."
 
 
 65
 While the district court enjoined the enforcement of § 61.874, it did so without making specific findings regarding the following four factors as set forth in Washington v. Reno, 35 F.3d 1093(6th Cir.1994):
 
 
 66
 The factors to be considered by a district court in deciding whether to grant a preliminary injunction are well established in this circuit. In making that determination a court must consider: (1) the likelihood that the party seeking the preliminary injunction will succeed on the merits of the claim; (2) whether the party seeking the injunction will suffer irreparable harm without the grant of the extraordinary relief; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the public interest is advanced by the issuance of the injunction.
 
 
 67
 Id. at 1099.
 
 
 68
 Without the benefit of such factual findings, it is impossible for us to judge the validity of the plaintiffs' arguments. As this court stated in Six Clinics Holding Corp., II v. Cafcomp Systems, Inc.: "A district court is required to make specific findings concerning each of the four factors, unless fewer factors are dispositive of the issue." 119 F.3d 393, 399 (6th Cir.1997). In this case, the district court did not make a specific finding with respect to any of the factors enumerated above. Although the plaintiffs cite examples of the allegedly arbitrary and capricious manner in which the agency has charged fees since the enactment of the statute, no such findings are in the record before us.
 
 
 69
 Accordingly, we vacate and remand the case back to the district court to make findings of fact and conclusions of law with regard to how § 61.874 has been applied by the state agency. In so doing, we suggest that the court particularly focus on the "creation" language in § 61.874(4)(c)(2). The agency could potentially be using this language to charge commercial users not only for the compilation, storage, and upkeep of such records by the agency itself, but also for the state's investigative and personnel costs that went into "creating" the record. In other words, the agency might be utilizing the "creation" language as a basis to charge more than the agency's marginal or even average cost in producing the records. Instead, the agency might be using this language to recoup the state's costs for law enforcement's investigation that backs up to the creation of accident reports. Any such interpretation of the statute might well be an arbitrary and capricious application sufficient to demonstrate that it is unconstitutional as applied.
 
 III. CONCLUSION
 
 70
 Having concluded that Kentucky Revised Statute § 189.635(6) violates part three of the Central Hudson test, we AFFIRM the district court's decision to enjoin the enforcement of § 189.635(5)-(6) as an unconstitutional infringement on the First Amendment right to freedom of expression. With respect to Kentucky Revised Statute § 61.874, however, the district court's failure to provide any findings of fact or conclusions of law requires that its decision to enjoin § 61.874 be VACATED and REMANDED for further proceedings consistent with this opinion.
 
 
 71
 SILER, Circuit Judge, concurring in part and dissenting in part.
 
 
 72
 I respectfully dissent, for I believe that the decision of the district court should be reversed entirely. Therefore, I concur in Part II.C. of the majority opinion where it vacates and remands the district court's decision concerning the challenge to Ky.Rev.Stat. § 61.874. I also concur in Part II.B. (severability), finding that if Ky.Rev.Stat. § 189.635(6) is unconstitutional, then the whole statute is unconstitutional. Nevertheless, because I would find that Ky.Rev.Stat. § 189.635(6) is not unconstitutional, the severability portion is not applicable to my opinion.
 
 
 73
 Initially, there is no general First Amendment right for the public to access criminal justice records. Lanphere & Urbaniak v. Colorado, 21 F.3d 1508, 1512 (10th Cir.1994). The majority is correct in analyzing the statute under the test from Central Hudson Gas & Electric Corp. v. Public Service Commission, 447 U.S. 557, 566, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). The majority, however, has stopped at the third prong from Central Hudson, finding that the regulation does not directly advance the governmental interest asserted.
 
 
 74
 Agreeing with the majority, I question whether the Commonwealth of Kentucky has shown that the prohibition against the release of the accident victims information reduces the opportunity for criminals to misuse such information, for there seems to be little evidence about that. However, the prohibition certainly serves to prevent the direct and unnecessary intrusion into the private lives and homes of accident victims and their families. Obviously, the attorneys and insurance carriers for the persons involved in the accident should have access to this information, for they are all representatives of the persons involved. In addition, the Commonwealth has allowed the news media to obtain this information for noncommercial use, that is, for news reports. Although this, to some degree, intrudes into the private lives and homes of the victims, it intrudes much less than publication in a commercial pamphlet intended to aid attorneys and chiropractors in soliciting the victims.
 
 
 75
 Although the majority finds United Reporting Publishing Corp. v. California Highway Patrol, 146 F.3d 1133 (9th Cir.1998), more persuasive than the decision in Lanphere, I believe Lanphere is more persuasive. Therefore, I would follow Lanphere and find that the Commonwealth has a substantial interest in the case and that the statute advances those interests in a reasonably direct way. Finally, I would find that the statute effects a reasonable fit under the framework of Central Hudson.