RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0168P (6th Cir.)
File Name: 03a0168p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

STEPHEN AMELKIN et al.,
  *Plaintiffs-Appellants,*

  *v.*                                No. 02-5079

ANN MCCLURE et al.
  *Defendants-Appellees.*

———————————

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 94-00360—John G. Heyburn II, Chief District Judge.

Argued: May 7, 2003

Decided and Filed: June 2, 2003

Before: KRUPANSKY, SILER, and GILMAN, Circuit
Judges.

———————————

## COUNSEL

**ARGUED:** Donald L. Cox, LYNCH, COX, GILMAN &
MAHAN, Louisville, Kentucky, for Appellants. James M.
Herrick, KENTUCKY STATE POLICE LEGAL OFFICE,
Frankfort, Kentucky, John H. Dwyer, Jr., PEDLEY, ZIELKE,
& GORDINIER, Louisville, Kentucky, for Appellees.
**ON BRIEF:** Donald L. Cox, Mary J. Lintner, LYNCH,
COX, GILMAN & MAHAN, Louisville, Kentucky, for

Appellants.  James M. Herrick, KENTUCKY STATE
POLICE LEGAL OFFICE, Frankfort, Kentucky, Laurence J.
Zielke, PEDLEY, ZIELKE, & GORDINIER, Louisville,
Kentucky, D. Brent Irvin, OFFICE OF THE ATTORNEY
GENERAL, Frankfort, Kentucky, for Appellees.

———————————

## OPINION

———————————

RONALD LEE GILMAN, Circuit Judge.  A number of
attorneys and chiropractors filed suit to challenge the
constitutionality of two Kentucky statutes that restrict their
access to accident reports filed with the Department of State
Police.  The district court granted summary judgment in favor
of the defendants.  For the reasons set forth below, we
**AFFIRM** the judgment of the district court.

## I.  BACKGROUND

In 1994, Kentucky amended § 189.635 of its Revised
Statutes for the ostensible purpose of protecting the privacy
of accident victims.  Subsections (5) and (6) of the statute
currently provide as follows:

> (5) All accident reports filed with the Department of
> State Police in compliance with subsection (4) above
> shall remain confidential except that the department may
> disclose the identity of a person involved in an accident
> when his identity is not otherwise known or when he
> denies his presence at an accident. Except as provided in
> subsection (7) of this section, all other accident reports
> required by this section, and the information contained in
> the reports, shall be confidential and exempt from public
> disclosure except when produced pursuant to a properly
> executed subpoena or court order, or except pursuant to
> subsection (6) of this section. These reports shall be
> made available only to the parties to the accident, the
> parents or guardians of a minor who is party to the

accident, and the insurers of any party who is the subject of the report, or to the attorneys of the parties.

(6) The report shall be made available to a news-gathering organization, solely for the purpose of publishing or broadcasting the news. The news-gathering organization shall not use or distribute the report, or knowingly allow its use or distribution, for a commercial purpose other than the news-gathering organization's publication or broadcasting of the information in the report. A newspaper, periodical, or radio or television station shall not be held to have used or knowingly allowed the use of the report for a commercial purpose merely because of its publication or broadcast.

Ky. Rev. Stat. Ann. § 189.635 (Michie supp. 2002).

Almost immediately after § 189.635 was amended, a group of chiropractors and attorneys filed suit against Ann McClure (a custodian of accident reports at a local state police post) and an assortment of other government officials, seeking an injunction against its enforcement. In August of 1994, the district court issued a preliminary injunction to enjoin the enforcement of § 189.635 after concluding that the statute impermissibly restricted commercial speech. The defendants immediately appealed. In February of 1996, this court dissolved the preliminary injunction and remanded the case back to the district court because one of the defendants had not had an opportunity to oppose the plaintiffs' motion for injunctive relief. *Amelkin v. McClure*, No. 94-6161, 1996 WL 8112 (6th Cir. Jan. 9, 1996) (*Amelkin I*).

The plaintiffs then filed a second amended complaint. Their principal new allegation was a claim that, during the time that § 189.635 had been enjoined, the defendants had applied § 61.874 of the Kentucky Revised Statutes in an unconstitutional manner. Section 61.874(3) provides in pertinent part as follows: "The public agency may prescribe a reasonable fee for making copies of nonexempt public records requested for use for noncommercial purposes which shall not exceed the actual cost of reproduction . . . ."

According to the plaintiffs, the defendants charged them between $40 and $230 per accident report during the pendency of the injunction, although before that time the copying fee was only 10 cents per page. The plaintiffs sought an injunction against the enforcement of § 61.874. In June of 1996, the district court preliminarily and permanently enjoined enforcement of both §§ 189.635 and 61.874. *Amelkin v. Comm'r, Dep't of State Police*, 936 F. Supp. 428 (W.D. Ky. 1996).

The defendants appealed. This court affirmed the district court's decision to enjoin the enforcement of § 189.635, but vacated the injunction against § 61.874 and remanded for reconsideration because the district court had failed to provide any findings of fact or conclusions of law as to that section. *Amelkin v. McClure*, 168 F.3d 893 (6th Cir. 1999) (*Amelkin II*). The defendants then sought review by the Supreme Court.

After granting certiorari, the Supreme Court vacated the Sixth Circuit's decision and remanded the case for further consideration in light of *Los Angeles Police Department v. United Reporting Publishing Corp.*, 528 U.S. 32 (1999). In *United Reporting*, the Supreme Court held that a California statute that placed conditions on public access to the records of recent arrestees' addresses was not susceptible to a facial challenge regarding its constitutionality. This court concluded upon remand that § 189.635 was similarly not subject to a facial challenge. Accordingly, the district court's injunction against the enforcement of § 189.635 was reversed and the case remanded so that the district court could consider the plaintiffs' challenge to the statute as applied to them. *Amelkin v. McClure*, 205 F.3d 293 (2000) (*Amelkin III*).

In June of 2001, the district court dissolved all injunctions that had previously been entered in the case. Both parties then moved for summary judgment. The district court concluded that § 189.635 did not abridge the plaintiffs' constitutional rights and that the challenge to § 61.874 was moot because the plaintiffs were not entitled to obtain copies

of the accident reports at any price. It therefore awarded summary judgment in favor of the defendants. *Amelkin v. McClure*, 178 F. Supp. 2d 766 (W.D. Ky. 2001). This timely appeal followed.

## II.  ANALYSIS

We review the district court's grant of summary judgment de novo. *Sperle v. Mich. Dep't of Corr.*, 297 F.3d 483, 490 (6th Cir. 2002). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

Because both sides in the present case moved for summary judgment, "[t]here is no dispute regarding the material facts of this case; indeed, each party insists that the facts as presented to the district court require summary judgment in his or her favor." *Kincaid v. Gibson*, 236 F.3d 342, 346 (6th Cir. 2001) (en banc). We may therefore assume, although we are not obligated to do so, "that there is no evidence which needs to be considered other than that which has been filed by the parties." *Id.* at 347.

As an initial matter, the defendants contend that the law of the case bars any argument that § 189.635 violates the plaintiffs' First Amendment rights. They claim that "[t]he exact issue now argued by Appellants—whether KRS 189.635 abridges *their* freedom of speech—has already been answered in the negative by this Court." (Emphasis in original.) This contention is incorrect. The court in *Amelkin III* decided only that "§ 189.635 is . . . not subject to a facial challenge . . . ." 205 F.3d at 296. It therefore "reverse[d] and remand[ed] the case for the district court to consider the plaintiffs' as-applied challenge." *Id.*

A "facial overbreadth challenge to a statute is an exception to the traditional rule that a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the

Court." *Los Angeles Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 39 (1999) (internal quotation marks omitted). *See generally* Richard H. Fallon, Jr., *As-Applied and Facial Challenges and Third-Party Standing*, 113 Harv. L. Rev. 1321 (2000) (identifying and evaluating the nature of "facial" and "overbreadth" challenges). This exception has two distinct aspects: it determines (1) *who* may challenge a statute, and (2) *on what grounds* a statute may be challenged.

In *United Reporting*, the information-gathering plaintiff sought to challenge the statute on the ground that it violated the rights of third parties (United Reporting's customers). Because the Supreme Court held that a facial overbreadth challenge was unavailable, the plaintiff was not the proper party to seek the statute's invalidation. United Reporting had not attempted to qualify under the statute to obtain the addresses of arrestees, 528 U.S. at 40, and it could not proceed on the theory that although the law might be constitutional as to itself, it could not be constitutionally applied to others, *id.* at 40-41.

The instant case differs in that the plaintiffs have in fact sought to obtain accident reports filed with the Department of State Police. They are thus asserting that § 189.635 violates their personal First Amendment rights. In asserting their own rights, however, the plaintiffs cannot prevail on the theory that § 189.635 curtails the rights of other parties not before the court. *Amelkin II* failed to recognize this point, and instead improperly focused on the restrictions that the statute placed upon news-gathering organizations rather than upon the plaintiffs. 168 F.3d at 897. Remand was therefore required by the Supreme Court so that both the district court and this court could decide whether the statute as applied to the plaintiffs was unconstitutional. *Amelkin III*, 205 F.3d at 296. The plaintiffs' "as applied" challenge to the constitutionality of § 189.635 thus remains to be addressed by this court. *See United Reporting*, 528 U.S. at 42 (Scalia, J., concurring) (clarifying that whether the statute was susceptible to a facial overbreadth challenge was "an entirely different question [than] whether a restriction upon access

that *allows* access to the press . . . , but at the same time *denies* access to persons who wish to use the information for certain speech purposes, is in reality a restriction upon speech," and noting that the latter question "is not addressed in the Court's opinion") (emphasis in original).

We therefore turn to the merits of the constitutional challenge to § 189.635 as applied to the plaintiffs. They argue that Kentucky has sought to restrict their speech indirectly, and that we should evaluate the statute's constitutionality by applying the principles enunciated by the Supreme Court in *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557 (1980). *Central Hudson* sets forth a four-part test to determine the validity of restrictions on commercial speech. We are of the opinion, however, that the plaintiffs' argument is inapposite.

Section 189.635, insofar as it applies to the plaintiffs, does not restrict or even regulate expression. Rather, it simply restricts *access* to confidential information possessed by the government. Counsel for the plaintiffs contended at oral argument that § 189.635 restricts the uses to which the plaintiffs may put accident reports if and when they obtain the reports. But the statute imposes no such restriction. It prohibits *news-gathering organizations* that have obtained accident reports from using them for commercial purposes. Because this case in its present posture is not a facial challenge, however, the plaintiffs cannot prevail on the basis that the statute may be unconstitutional as applied to news-gathering organizations that have obtained accident reports. Assuming that the *plaintiffs* could obtain information regarding accident victims, the statute in question places no restriction on how they may use that information. We therefore conclude that precedent concerning government regulation of commercial speech does not provide the correct framework for analyzing this case.

On the other hand, to the extent that the defendants' argument extends beyond their contention that the law of the case controls the merits of the plaintiffs' claim, they

mischaracterize § 189.635. The defendants assert that the statute is in effect a blanket prohibition on the disclosure of accident reports, and they argue that the plaintiffs are essentially seeking an exemption to a law that otherwise applies equally to everyone. Section 189.635, however, is not a flat ban on the dissemination of accident reports by the state police. Instead, the statute permits disclosure "to the parties to the accident, the parents or guardians of a minor who is party to the accident, and the insurers of any party who is the subject of the report, or to the attorneys of the parties," as well as to "news-gathering" organizations. These exceptions refute the defendants' argument that the ban applies across the board.

Neither party, therefore, provides a persuasive analysis of the constitutionality of § 189.635. The statute is neither a direct regulation of expression nor a purely content-neutral law of general application. Because Kentucky's statute sits between these two positions, we instead consider the nature of the constitutional objections that might be raised to a statute that treats certain potential speakers more favorably than others.

Every Justice who expressed an opinion in *United Reporting* indicated that a state "could decide not to give out [accident reports] at all without violating the First Amendment." 528 U.S. at 40. But a majority of the Justices also made clear that a state "could not, for example, release [accident reports] only to those whose political views were in line with the party in power." *Id.* at 43 (Ginsburg, J., concurring); *see also id.* at 46 (Stevens, J., dissenting).

This second proposition derives from the "unconstitutional-conditions" doctrine, which "holds that government may not grant a benefit on the condition that the beneficiary surrender a constitutional right, even if the government may withhold that benefit altogether." Kathleen M. Sullivan, *Unconstitutional Conditions*, 102 Harv. L. Rev. 1413, 1415 (1989). For example, in *Board of County Commissioners v. Umbehr*, 518 U.S. 668 (1996), which Justice Ginsburg cited

in *United Reporting*, the Court held that the First Amendment prevented a county from terminating the at-will employment of an independent contractor on the basis that the county was unhappy with the political views expressed by the contractor. But § 189.635, at least as applied to the plaintiffs, does not condition the disclosure of accident reports on the nature of the recipient's speech. It therefore does not present the type of unconstitutional-conditions problem found in *Umbehr*.

The statute would also be constitutionally suspect if it had singled out a small group for unfavorable treatment based either on the content or the viewpoint of the group's speech. *See Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 229 (1987) (holding a state sales tax scheme unconstitutional that taxed general-interest magazines, but exempted newspapers and religious, professional, trade, and sports magazines). If, for example, the statute provided for the disclosure of accident reports to the general public, but prohibited their disclosure to attorneys and chiropractors, this principle would be implicated. *See Legi-Tech, Inc. v. Keiper*, 766 F.2d 728, 731 (2d Cir. 1985) (holding a state statute unconstitutional that permitted the general public to access a state-maintained database of pending legislation, but denied such access to "those entities which offer for sale the services of an electronic information retrieval system which contains data relating to the proceedings of the legislature").

Section 189.635, however, does not operate in this manner. It prohibits disclosure to all but news-gathering organizations and those individuals with a personal interest in the accident. At oral argument, counsel for the plaintiffs suggested that the statute grants access to accident reports to everyone except those who intend to use the reports in commercial speech. But this is simply not a plausible interpretation of § 189.635. The statute does not specifically disfavor discrete groups on content-related grounds.

In sum, applicable Supreme Court precedent does not suggest that § 189.635 offends the First Amendment rights of the plaintiffs. The statute as applied to them is therefore

constitutional if it satisfies the requirements of the Equal Protection Clause. That is, § 189.635 must rationally further a legitimate state interest. *Romer v. Evans*, 517 U.S. 620, 631 (1996) ("[I]f a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end.").

Plaintiffs' counsel suggested at oral argument that the court already decided this issue in *Amelkin II*, and that the law-of-the-case doctrine precludes its reconsideration here. We disagree. Although the court in *Amelkin II* did state that "[t]here is no rational basis for a statute which purports to advance the governmental interest in protecting the privacy of accident victims to allow their names and addresses to be published or broadcast to the general public," 168 F.3d at 900, this statement was made in the context of deciding whether the statute satisfied the requirements of the First Amendment for restrictions on commercial speech. The court did not purport to address the equal-protection issue.

In any event, the Supreme Court vacated this court's judgment in *Amelkin II*. The Sixth Circuit's reasoning in the vacated decision thus does not operate as the law of the case. *See Safeco Ins. Co. of Am. v. City of White House*, 191 F.3d 675, 693 (6th Cir. 1999) (holding that where the court of appeals had vacated a district court's judgment and the district court upon remand had reconsidered the issue of damages, the "law of the case" did not bar appellate review of the award of damages); *Commercial Union Ins. Co. v. Walbrook Ins. Co.*, 41 F.3d 764, 769 (1st Cir. 1994) ("The doctrine of the law of the case directs that a decision of an appellate court on an issue of law, *unless vacated or set aside*, governs the issue during all subsequent stages of litigation in the *nisi prius* court and thereafter on any further appeal.") (first emphasis added; second emphasis in original).

We therefore address the merits of the equal-protection issue. Protecting the privacy of accident victims is a legitimate state interest. By limiting public disclosure of

accident reports, § 189.635 rationally furthers that interest. Permitting news-gathering organizations to access the reports does not completely negate this legitimate interest. Kentucky's legislature might well have concluded that the occasional publication of information contained in an accident report because of its newsworthy nature is less invasive to the overall class of accident victims than the myriad other uses to which such reports could be put. The legislature could have easily assumed that the number of accident reports of interest to news-gathering organizations would be infinitesimal as compared to the overall number of accident reports on file. *See Williamson v. Lee Optical Co.*, 348 U.S. 483, 489 (1955) (holding that, absent invidious discrimination, government may further its legitimate interests incrementally).

The plaintiffs also claim that the district court erred in determining that their constitutional challenge to the application of § 61.874 was moot. They argue that if the district court's ruling on § 189.635 is reversed, they will again be subject to excessive fees for the copying of accident reports. If we had decided that § 189.635 is unconstitutional as applied to the plaintiffs, the district court on remand would have indeed needed to consider the plaintiffs' challenge to the application of § 61.874. Because the plaintiffs are not entitled to the accident reports they seek, however, the district court correctly decided that their challenge to § 61.874 is moot. *See Thompson v. Ashe*, 250 F.3d 399, 409 (6th Cir. 2001) ("Because Thompson has shown no violation of his constitutional rights, the question of whether the City of Knoxville, its Mayor and Police Chief, are liable for violating plaintiffs' civil rights by enforcing the policy is moot."); *Goar v. Civiletti*, 688 F.2d 27, 29 (6th Cir. 1982) (holding that, where a former prisoner alleged that his conditions of confinement were unconstitutional, "the injunctive relief sought is now moot since Goar is no longer imprisoned").

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.