**UNITED REPORTING PUBLISHING CORP., a California corporation, Plaintiff–Appellee,**

v.

**CALIFORNIA HIGHWAY PATROL, Defendant,**

and

**Los Angeles Police Department, Defendant–Appellant.**

No. 97–55111.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 9, 1998.

Decided June 25, 1998.

Byron R. Boeckman, James K. Hahn, Fredrick N. Merkin, City Attorneys, Los Angeles, California, for defendant-appellant Los Angeles Police Department.

Guylyn R. Cummins, Ben P. Jones, Gray, Cary, Ware & Freidenrich, San Diego, California, for plaintiff-appellee United Reporting.

Before: FARRIS, O'SCANNLAIN, and FERNANDEZ, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must decide whether a state regulation that prohibits the release of arrest information for commercial purposes violates the First Amendment.

## I

Prior to July 1, 1996, California Government Code § 6254 provided that "state and local law enforcement agencies shall make public ... [t]he full name, current address, and occupation of every individual arrested by the agency." Cal. Gov.Code § 6254(f). This provision made arrestee addresses available to anyone for any purpose. On July 1, 1996, however, California Government Code § 6254(f) was amended to prohibit the release of arrestee addresses to people who intend to use those addresses for commercial purposes. California Government Code § 6254(f) now provides that state and local law enforcement agencies shall make public:

> the current address of every individual arrested by the agency and the current address of the victim of a crime, where the register declares under penalties of perjury that the request is made for a scholarly, journalistic, political, or governmental purpose, or that the request is made for investigation purposes by a licensed private investigator.... *Address information obtained pursuant to this paragraph shall not be used directly or indirectly to sell a product or service to any individual or group of individuals, and the requester shall execute a declaration to that effect under penalty of perjury.*

Cal. Gov.Code § 6254(f)(3) (emphasis added).

United Reporting Publishing Corporation ("United Reporting") is a private publishing service that had been providing, under the old version of the statute, the names and addresses of recently arrested individuals to its clients. These clients include attorneys, insurance companies, drug and alcohol counselors, religious counselors, and driving schools. The Los Angeles Police Department ("LAPD") maintains certain records relating to arrestees, including names, addresses, and the charges of arrest.

Pursuant to 42 U.S.C. § 1983, United Reporting filed a complaint before the district court seeking declaratory judgment and injunctive relief on the grounds that the amendment to § 6254 was unconstitutional under the First Amendment and the Fourteenth Amendment to the United States Constitution. The district court agreed, holding that California Government Code § 6254(f)(3) violated the First Amendment. *See United Reporting Publishing Corp. v. Lungren,* 946 F.Supp. 822, 829 (S.D.Cal.1996). The district court did not reach United Reporting's Fourteenth Amendment argument. The LAPD timely appealed.[1]

---

**1.** Before the district court, the LAPD was joined by the San Diego Sheriff's Department and the California Highway Patrol. The LAPD is the only party to appeal the district court's decision.

## II

The LAPD contends that the district court erred in holding that § 6254(f)(3) violates the First Amendment right to freedom of expression. Specifically, the LAPD maintains that the district court misapplied the four-part test laid down by the Supreme Court in *Central Hudson Gas and Electric Corporation v. Public Service Commission of New York*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), for analyzing the constitutionality of government regulations limiting so-called "commercial" speech.

For its part, United Reporting argues that, contrary to the district court's finding, the activity in which it engages, selling arrestee information to clients, is not commercial speech at all, but noncommercial speech, the regulation of which is subject to strict scrutiny under the United States and California constitutions. In the alternative, United Reporting claims that § 6254(f)(3) burdens its dissemination of truthful, nonmisleading commercial speech concerning the right to retain competent counsel and other assistance in violation of the United States and California constitutions.

## III

■ We start with a comment on the protection provided under the First Amendment to what has been commonly designated "commercial" speech. Although the Supreme Court once held that the First Amendment did not protect commercial speech, *see Valentine v. Chrestensen*, 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262 (1942), it repudiated that position in *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 765, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). The current debate centers not on whether commercial speech is a form of expression entitled to constitutional protection, but on the validity of the distinction between commercial and noncommercial speech. *See, e.g., 44 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 116 S.Ct. 1495, 1518, 134 L.Ed.2d 711 (1996) (Thomas, J., concurring) ("I do not see a philosophical or historical basis for asserting that 'commercial' speech is of 'lower value' than 'noncommercial' speech. Indeed, some historical materials suggest to the contrary."); Kozinski & Banner, *Who's Afraid of Commercial Speech?*, 76 Va. L.Rev. 627, 634–38 (1990) (questioning basis for distinction). We are compelled, however, under the Supreme Court's current jurisprudence, to afford commercial speech less protection from governmental regulation than some other forms of expression. *See, e.g., United States v. Edge Broadcasting Co.*, 509 U.S. 418, 426, 113 S.Ct. 2696, 125 L.Ed.2d 345 (1993) ("Our decisions ... have recognized the 'common-sense' distinction between speech proposing a commercial transaction, which occurs in an area traditionally subject to government regulation, and other varieties of speech. The Constitution therefore affords a lesser protection to commercial speech than to other constitutionally guaranteed expression.") (citations omitted). Consequently, restrictions that might be violative of the First Amendment in other areas of expression may be tolerated in the realm of commercial speech. *See Valley Broadcasting Co. v. United States*, 107 F.3d 1328, 1330 (9th Cir.1997).

As an initial matter, we must address United Reporting's claim that it uses arrestee information to engage in fully-protected noncommercial speech, the regulation of which is subject to strict scrutiny under the United States and California constitutions, not commercial speech, and that the district court erred in holding otherwise. United Reporting maintains that commercial speech has been "defined and limited" by the Supreme Court to "speech which does 'no more than propose a commercial transaction.'" *Virginia State Bd.*, 425 U.S. at 762, 96 S.Ct. 1817 (citations omitted). According to United Reporting, speech which goes beyond the mere proposal of such a transaction and involves the passing of ideas and information—including ideas and information necessary to the exercise of the Sixth Amendment right to retain the assistance of counsel—cannot be considered mere commercial speech.

■ The definition of commercial speech is not as settled as United Reporting would have us believe, however. Although "[t]here is no longer any room to doubt that what has come to be known as 'commercial speech' is entitled to the protection of the First Amendment ... [m]ore subject to doubt ... are the precise bounds of the category of expression

that may be termed commercial speech...." *Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio,* 471 U.S. 626, 637, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985). United Reporting is correct that speech which "merely proposes a commercial transaction" falls within the boundaries of commercial speech; indeed, this is the "core notion" of commercial speech. *Bolger v. Youngs Drug Products,* 463 U.S. 60, 66, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983). This "core notion" is the beginning of our inquiry, however, not the end, as United Reporting claims. In *Central Hudson,* the Supreme Court indicated that it would regard as commercial speech any "expression related solely to the economic interests of the speaker and its audience." 447 U.S. at 561, 100 S.Ct. 2343. This is obviously broader than speech which proposes a commercial transaction; people often discuss their economic interests without proposing commercial transactions. The Supreme Court has abstained from creating bright-line rules in this area and so should we. *See Bolger,* 463 U.S. at 66–68, 103 S.Ct. 2875 (noting that advertisements are not necessarily commercial speech despite fact that advertiser has an economic motivation and that linking advertisements to important public issues does not necessarily entitle speech to constitutional protection afforded noncommercial speech). Hence, we must examine the disputed communication in light of its surrounding circumstances to determine whether it is entitled to the qualified protection accorded to commercial speech.

■ That said, United Reporting's speech would be considered commercial under either a broad or a narrow definition. United Reporting makes an effort to link its speech to that of its clients' solicitations to arrestees in an effort to demonstrate that it does more than propose an economic transaction. This effort fails. United Reporting sells arrestee information to clients; nothing more. Its speech can be reduced to, "I [United Reporting] will sell you [client] the X [names and addresses of arrestees] at the Y price." *See Virginia State Bd.,* 425 U.S. at 762, 96 S.Ct.

1817. This is a pure economic transaction, *see Ficker v. Curran, Jr.,* 119 F.3d 1150, 1153 (4th Cir.1997), comfortably within the "core notion" of commercial speech. *Bolger,* 463 U.S. at 66, 103 S.Ct. 2875. Although this does not disqualify United Reporting from First Amendment protection, *see Virginia State Bd.,* 425 U.S. at 762, 96 S.Ct. 1817, it does mean that its speech is entitled to only "a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values." *Ohralik v. Ohio State Bar Ass'n,* 436 U.S. 447, 456, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978).[2]

**IV**

■ In *Central Hudson,* the Supreme Court articulated a four-part test under which to analyze the constitutionality of government regulations limiting commercial speech:

At the outset, (1) we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, (2) we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, (3) we must determine whether the regulation directly advances the governmental interest asserted, and (4) whether it is not more extensive than is necessary to serve that interest.

447 U.S. at 566, 100 S.Ct. 2343 (enumeration added).

The parties agree that the speech at issue is neither illegal nor misleading under the first prong. Rather, their dispute centers around the remaining three prongs of *Central Hudson.*

**A**

Before the district court, the LAPD and its codefendants advanced two governmental interests in support of § 6254(f)(3):

**2.** It is not at all clear that the clients are engaging in noncommercial speech in any event. Every other court which has considered a statute similar to § 6254(f)(3) has found that attorney solicitation of arrestees under these circumstances constitutes commercial speech. *See, e.g., Moore v. Morales,* 63 F.3d 358, 361 (5th Cir. 1995); *Lanphere & Urbaniak v. Colorado,* 21 F.3d 1508, 1513 (10th Cir.1994); *Speer v. Miller,* 15 F.3d 1007, 1010 (11th Cir.1994).

From a law enforcement perspective, (1) the processing of the requests puts a *tremendous strain on already scarcely allocated time and resources.* F[rom] a consumer perspective, (2) this is a *invasion of privacy.* While these records are justifiably public in many ways, the unsolicited direct mail advertisements are unwarranted.

*United Reporting,* 946 F.Supp. at 826 (enumeration and emphasis added) (quoting Legislative History of § 6254(f)(3)). Only the second interest, protecting the privacy of arrestees, need concern us here.[3]

 The district court found the interest in protecting the privacy of arrestees to be substantial. *See United Reporting,* 946 F.Supp. at 826. The district court was persuaded by the fact that numerous other courts considering similar statutes have reached the same conclusion. *Id.* (citing *Florida Bar v. Went For It, Inc.,* 515 U.S. 618, 625–33, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995); *Lanphere & Urbaniak v. Colorado,* 21 F.3d 1508, 1513–14 (10th Cir.1994); *Speer v. Miller,* 864 F.Supp. 1294, 1297–98 (N.D.Ga.1994)). Its finding is well-grounded: "The State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society." *Carey v. Brown,* 447 U.S. 455, 471, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980). Indeed, "[the Supreme Court's] precedents ... leave no room for doubt that 'the protection of potential clients' privacy is a substantial state interest.'" *Florida Bar,* 515 U.S. at 625, 115 S.Ct. 2371. The Court has "noted that 'a special benefit of the privacy all citizens enjoy within their own walls, which the State may legislate to protect, is an ability to avoid intrusions.'" *Id.* (quoting *Frisby v. Schultz,* 487 U.S. 474, 484–85, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988)). Hence, we hold that the district court was correct in finding the privacy interest of arrestees to be substantial.

**B**

 Determining the asserted interest in privacy to be substantial does not end our inquiry, however. Rather, we now turn to *Central Hudson*'s third prong, whether the challenged regulation "advances the Government's interest 'in a direct and material way.'" *Rubin v. Coors Brewing,* 514 U.S. 476, 487, 115 S.Ct. 1585, 131 L.Ed.2d 532 (1995) (quoting *Edenfield v. Fane,* 507 U.S. 761, 767, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993)). The LAPD, the "party seeking to uphold [the] restriction on commercial speech[,] carries the burden of justifying it." *Bolger,* 463 U.S. at 71 n. 20, 103 S.Ct. 2875. This burden may not be satisfied by "mere speculation or conjecture." *Edenfield,* 507 U.S. at 770, 113 S.Ct. 1792. Instead, "'a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree.'" *Coors Brewing,* 514 U.S. at 487, 115 S.Ct. 1585 (quoting *Edenfield,* 507 U.S. at 770, 113 S.Ct. 1792). "'[T]he regulation may not be sustained if it provides only ineffective or remote support for the government's purpose.'" *Edenfield,* 507 U.S. at 770, 113 S.Ct. 1792 (quoting *Central Hudson,* 447 U.S. at 564, 100 S.Ct. 2343).

The district court found that the amended statute does not directly and materially advance the government's interest in protecting the privacy and tranquility of its residents. *See United Reporting,* 946 F.Supp. at 827–29. The LAPD claims that the district court erred in so finding, arguing that a prohibition against the release of arrestee information "reduces the opportunity for commercial interests to create and maintain an unreliable criminal history information bank which could have the effect of destroying the employment potential of the innocent, the reformed, the pardoned and the young" and

---

**3.** Although the district court found the asserted governmental interest in minimizing the costs of producing arrestee information to be substantial, *see United Reporting,* 946 F.Supp. at 826, it held that § 6254(f)(3) does not directly and materially advance this interest and, therefore, failed the third *Central Hudson* prong. *See id.* at 829. The LAPD has failed to challenge this finding on appeal. Consequently, it has waived any challenge to the district court's finding on the cost issue. *See Officers for Justice v. Civil Service Commission,* 979 F.2d 721, 726 (9th Cir.1992) (holding that failure to raise argument in opening brief constitutes waiver). Hence, the only interest at issue here is the asserted governmental interest in protecting the privacy of arrestees.

prevents the "direct intrusion into the private lives and homes of arrestees and victims."

▉ First, the LAPD has provided no evidence whatsoever in support of its contention that there is a danger that commercial interests would create "unreliable criminal history information banks" if they had access to arrestee addresses. In fact, these addresses *were* available to commercial interests prior to the amendment of § 6254 and, as far as we can tell, no commercial interests have ever maintained the aforementioned "criminal history information banks." This asserted harm appears to be no more than speculation and conjecture, which is insufficient to sustain a restriction on commercial speech. *See Coors Brewing*, 514 U.S. at 487, 115 S.Ct. 1585. Because the LAPD has failed to sustain its burden of proving that this harm is real, we need not consider whether the restriction will alleviate the asserted harm to a material degree. *See id.*

▉ The second harm asserted by the LAPD, preventing the "direct intrusion into the private lives and homes of arrestees and victims," is somewhat more weighty. The district court rejected the contention that § 6254(f)(3) directly and materially advances the governmental interest in protecting the privacy and tranquility of its residents. *See United Reporting*, 946 F.Supp. at 827. The district court found that § 6254(f)(3) does not restrict all (or probably even most) possible invasions of a person's privacy. *See id.* at 828. It noted that " [a]nyone may access the records in question so long as they do not do so with an eye towards using the information for certain types of commercial solicitations.' " *Id.* (quoting *Speer*, 864 F.Supp. at 1302). The fact that journalists, academi-

cians, curiosity seekers, and other noncommercial users may peruse and report on arrestee records, the district court observed, belies the LAPD's claim that the statute is actually intended to protect the privacy interests of arrestees. *See id.* Instead, it appears to be more directed at preventing solicitation practices. *See id.* The district court also noted that "[i]t is hard to see how direct mail solicitations invade the privacy of arrestees. If they don't like the solicitation, they can simply throw it away." *Id.; see also Bolger*, 463 U.S. at 72, 103 S.Ct. 2875 ("The First Amendment does not permit the government to prohibit speech as intrusive unless the 'captive' audience cannot avoid objectionable speech. Recipients of objectionable mailings, however, may effectively avoid further bombardment of their sensibilities simply by averting their eyes. Consequently, the short, though regular journey from the mail box to the trash can . . . is an acceptable burden, at least so far as the Constitution is concerned.") (citations omitted). The district court correctly remarked that the privacy of arrestees was not invaded by the solicitation itself, but by the solicitor's discovery of the information that led to the solicitation. *See United Reporting*, 946 F.Supp. at 828 (citing *Shapero v. Kentucky Bar Ass'n*, 486 U.S. 466, 476, 108 S.Ct. 1916, 100 L.Ed.2d 475 (1988) ("The [privacy] invasion, if any, occurs when the lawyer discovers the recipient's legal affairs, not when he confronts the recipient with the discovery [through a targeted direct-mail solicitation].")).[4] For these reasons, the district court held that § 6254(f)(3) failed the third prong of *Central Hudson. See id.* at 829.

---

4. The LAPD claims that the district court erred in not following the Tenth Circuit's decision in *Lanphere & Urbaniak*, 21 F.3d 1508, which concerned a similar statute. In that case, the Tenth Circuit held that it had "no trouble" finding that the state's interest in protecting privacy was directly advanced by the statute in question. Unfortunately, our sister circuit failed to provide any analysis in support of its conclusion. *See id.* at 1515. Instead, the court simply asserted:

> The State's interest in protecting privacy is *directly advanced* when the State no longer allows access to the names and addresses of those charged with misdemeanor traffic violations and [Driving Under the Influence]. Further, refusing access to such information *rea-*

> *sonably directly advances* the State's interest in lessening the danger of overreaching by solicitors where potential solicitation recipients may be particularly vulnerable.

*Id.* (emphasis added). The district court was correct not to follow *Lanphere. Lanphere* fails to take into account the Supreme Court's decision in *Edenfield*, 507 U.S. at 767, 113 S.Ct. 1792 (holding that the second prong of *Central Hudson* requires the challenged regulation to advance the state interests "in a direct and *material* way," not merely a direct or "reasonably" direct way), and is in conflict with *Coors Brewing*, 514 U.S. 476, 115 S.Ct. 1585, 131 L.Ed.2d 532, and our decision in *Valley Broadcasting*, 107 F.3d 1328, which we will discuss *infra*.

We agree with the district court. The myriad of exceptions to § 6254(f)(3) precludes the statute from directly and materially advancing the government's purported privacy interest. *See Valley Broadcasting Co.,* 107 F.3d at 1334. We take our direction from *Coors Brewing,* 514 U.S. 476, 115 S.Ct. 1585, 131 L.Ed.2d 532, in which the Supreme Court held that 27 U.S.C. § 205(e)(2), which prohibited brewers from disclosing the alcohol content of beers on their labels, violated the First Amendment. *See id.* at 487–89, 115 S.Ct. 1585. The Court held that the government's asserted interest in avoiding alcohol "strength wars" was substantial, but that § 205(e)(2) did not directly advance that interest "because of the overall irrationality of the Government's regulatory scheme." *Id.* at 488, 115 S.Ct. 1585. In reaching its decision, the Court emphasized the numerous exceptions to § 205(e)(2), including the exception for wines and distilled spirits, which were allowed to list alcohol content on their labels, and the failure to extend the ban on disclosing alcohol content to advertisements. *See id.* The Court held that "[t]here is little chance that [the regulation at issue] can directly and materially advance its aim, while other provisions of the same act directly undermine and counteract its effects." *Id.* at 489, 115 S.Ct. 1585.

In *Valley Broadcasting,* we considered whether federal regulations which criminalized the broadcast of advertisements for casino gambling violated the First Amendment. *See Valley Broadcasting,* 107 F.3d at 1336. Applying *Coors Brewing,* we held that the federal ban on broadcast advertisements did not directly and materially advance the government's interests in reducing public participation in commercial lotteries and in protecting those states which chose not to permit casino gambling within their borders. *See Valley Broadcasting,* 107 F.3d at 1334–36. We were compelled to reach this result in light of the numerous exceptions to the ban, including those for state-run lotteries, fishing contests, not-for-profit lotteries, and gaming conducted by Indian tribes. *See id.*

As did the Court in *Coors Brewing,* we held that the regulatory scheme could not directly and materially advance its aim while other provisions of the same statute directly undermined and counteracted its effects. *See Valley Broadcasting,* 107 F.3d at 1334.

Likewise here, we are compelled to hold that the numerous exceptions to § 6254(f)(3) for journalistic, scholarly, political, governmental, and investigative purposes render the statute unconstitutional under the First Amendment. It is not rational for a statute which purports to advance the governmental interest in protecting the privacy of arrestees to allow the names and addresses of the same to be published in any newspaper, article, or magazine in the country so long as the information is not used for commercial purposes. Having one's name, crime, and address printed in the local paper is a far greater affront to privacy than receiving a letter from an attorney, substance abuse counselor, or driving school eager to help one overcome his present difficulties (for a fee, naturally). The exceptions to § 6254(f)(3) "undermine and counteract" the asserted governmental interest in preserving privacy just as surely as did the exceptions in *Coors Brewing* and *Valley Broadcasting.* We must therefore conclude that § 6254(f)(3) fails to satisfy *Central Hudson.*[5]

## V

Having concluded that § 6254(f)(3) violates *Central Hudson,* the district court properly struck it down as an unconstitutional infringement of United Reporting's First Amendment rights.[6]

AFFIRMED.

---

**5.** Because we conclude that the challenged regulation does not directly advance the asserted governmental interests, we need not reach the final prong of *Central Hudson. See Valley Broadcasting,* 107 F.3d at 1336 n. 9.

**6.** Because we hold that the challenged regulation violates the First Amendment, we do not reach United Reporting's equal protection, due process, or overbreadth arguments.