**RHODE ISLAND ASSOCIATION OF REALTORS, INC., Plaintiffs,**

v.

**Sheldon WHITEHOUSE, Attorney General, Defendants.**

**No. C.A. 97–593–T.**

United States District Court, D. Rhode Island.

June 9, 1999.

*DECISION AND ORDER*

TORRES, District Judge.

## MEMORANDUM AND ORDER

The Rhode Island Association of Realtors, Inc. (the "Association") brings this action, pursuant to 42 U.S.C. § 1983, in which it seeks a declaration that R.I.Gen. Laws § 38–2–6 is unconstitutional, an injunction against enforcement of the statute and an award of attorneys' fees. The Association contends that the statutory prohibitions against using information obtained from public records for commercial solicitation and for obtaining an unfair commercial advantage over the party submitting the information, violate the free speech guarantee of the First Amendment to the United States Constitution.

The Rhode Island Attorney General has moved to dismiss for lack of standing, and the Association has moved for summary judgment. Because I find that the Association has standing to challenge the portion of the statute that prohibits commercial solicitation and because I further find that only that portion of the statute is unconstitutional, both motions are granted, in part, and denied, in part.

### Background

The Rhode Island Public Records Act, R.I.Gen.Laws §§ 38–2–1 *et seq.*, (the "Act") makes all records maintained by governmental agencies, except those specifically exempted, accessible to the public. However, § 38–2–6 limits the purposes for which information obtained from such records may be used. It provides:

*38–2–6. Commercial use of public records* —No person or business entity shall use information obtained from public records pursuant to this chapter to solicit for commercial purposes or to obtain a commercial advantage over the party furnishing that information to the public body. Anyone who knowingly and willfully violates the provision of this section shall, in addition to any civil liability, be punished by a fine of not

Mark W. Freel, Edwards & Angell, Providence, RI, for plaintiffs.

Rebecca Tedford Partington, Brenda A. Doyle, Office of the Attorney General, Providence, RI, for defendants.

more than five hundred dollars ($500) and/or imprisonment for no longer than one year.

In its complaint, the Association alleges that it is an organization consisting of licensed real estate agents that seeks to "[c]ompile a computerized data base of information from tax assessors' records to be made available to member realtors at a reasonable cost," (Compl. ¶ 6), and to "[u]se certain data identifying new or recent real estate licensees in Rhode Island who are not yet affiliated with Plaintiff in an effort to solicit potential new members and market Plaintiff's services." (Compl. ¶ 7.) The Association claims that § 38–2–6 unconstitutionally prohibits those proposed activities and that the Association has been deterred from engaging in them because it fears prosecution.

When this action was commenced, Jeffrey Pine was Rhode Island's Attorney General. He expressed the opinion that neither of the Association's proposed activities would violate the statute and he disclaimed any intention of prosecuting the Association for engaging in those activities. Accordingly, he filed the instant motion to dismiss on the ground that the Association lacks standing. Sheldon Whitehouse, who several months ago succeeded Pine as Attorney General, has not expressed an opinion regarding the statute's applicability and has not disclosed his intentions regarding possible prosecution of the Association.

Despite the position taken by Attorney General Pine, the Association insists that its proposed activities are prohibited by § 38–2–6 and that engaging in those activities would expose it to the risks of prosecution. Accordingly, the Association is pressing for a declaration that the statute is unconstitutional and has moved for summary judgment.

### Standard of Review

#### I. Motion to Dismiss

Although the Motion to Dismiss is made pursuant to Fed.R.Civ.P. 12(b)(6), it rests upon the contention that the plaintiff lacks standing to maintain this action. Since standing is required to establish subject matter jurisdiction, the Court will treat the motion as a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1).

When subject matter jurisdiction is challenged, the plaintiff must bear the burden of establishing that such jurisdiction exists. See Bank One, Texas, N.A. v. Montle, 964 F.2d 48, 50 (1st Cir.1992); Palazzolo v. Ruggiano, 993 F.Supp. 45, 46 (D.R.I.1998). Where the jurisdictional facts alleged in the complaint are undisputed, they are treated as true and the court should draw from them all reasonable inferences favorable to the plaintiff. See id. at 47. On the other hand, when the relevant facts are controverted, the court may engage in whatever fact finding is required and may consider evidence challenging and/or supplementing the plaintiff's jurisdictional allegations. Rivera–Flores v. Puerto Rico Tel. Co., 64 F.3d 742, 748 (1st Cir.1995); Smith v. O'Connell, 986 F.Supp. 73, 75 (D.R.I.1997).

#### II. Summary Judgment

Fed.R.Civ.P. 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In determining whether a genuine dispute of material fact exists, the Court must view the evidence in the light most favorable to the non-moving party and it must draw all reasonable inferences in that party's favor. See United States v. One Parcel of Real Property, 960 F.2d 200, 204 (1st Cir.1992). The mere existence of a dispute over factual issues is not enough; the disputed facts must be material. Thus, only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of

summary judgment. *See Gadson v. Concord Hosp.*, 966 F.2d 32, 33 (1st Cir.1992).

### Discussion

#### I. *Standing to Challenge the Statute*

■ A court lacks jurisdiction to entertain an action unless the plaintiff has standing to bring it. *See Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343 (1975); *New Hampshire Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 12 (1st Cir.1996). The requirement of standing is rooted in Article III of the Constitution, which limits courts to deciding "cases" and "controversies."

■ A Plaintiff bears the burden of demonstrating standing to invoke the jurisdiction of a federal court. In order to establish standing, a prospective plaintiff must show that the defendant's conduct has subjected the plaintiff to an actual or threatened injury. *See Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). The injury must be "distinct and palpable" as opposed to "abstract," "conjectural," or "hypothetical." *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984).

■ A subjective fear of prosecution is insufficient to confer standing. *See Gardner*, 99 F.3d at 13. The plaintiff must establish that the fear is well-founded and "not imaginary or wholly speculative." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302, 99 S.Ct. 2301, 2311, 60 L.Ed.2d 895 (1979). Thus, the mere existence of a penal statute does not permit adjudication of its constitutionality "if real threat of enforcement is wanting." *Poe v. Ullman*, 367 U.S. 497, 507, 81 S.Ct. 1752, 1758, 6 L.Ed.2d 989 (1961) (plurality opinion).

In this case, the Attorney General argues that the complaint is deficient because the Association's proposed activities do not violate § 38–2–6 and because the complaint fails to allege any realistic threat of prosecution. The Attorney General also argues that the case is not ripe because "the proper time to bring such a challenge would be as a defense to a criminal charge." (Pl.'s Memo. at 3.) Those arguments are not persuasive.

■ A party disputing the constitutionality of a statute that criminalizes activity in which that party plans to engage is not required to "first expose himself to actual arrest or prosecution to be entitled to challenge (the) statute." *Babbitt*, 442 U.S. at 298, 99 S.Ct. at 2309 (quoting *Steffel v. Thompson*, 415 U.S. 452, 459, 94 S.Ct. 1209, 1216, 39 L.Ed.2d 505 (1974)). It is enough for the party to demonstrate that (1) he or she intends to engage in a specific course of conduct; (2) the conduct arguably is affected with a constitutional interest; (3) the conduct is proscribed by the statute; and (4) a credible threat of prosecution exists. *See Babbitt*, 442 U.S. at 298, 99 S.Ct. at 2309; *Gardner*, 99 F.3d at 13.

■ Here, those requirements are satisfied at least insofar as the proposed solicitation of prospective members is concerned. Commercial solicitation is a form of commercial speech protected by the First Amendment. *See generally Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983) (invalidating ban on unsolicited mailing of contraceptive advertisements). *See also Innovative Database Sys. v. Morales*, 990 F.2d 217, 222 (5th Cir.1993) (voiding a Texas statute that prohibited a person who obtained information about a crime or accident victim from using that information "for the purpose of soliciting business from the person"). Moreover, notwithstanding the Attorney General's contrary opinion, because the proposed solicitation is designed to attract new members and to market the Association's services, it appears to fall within the statutory prohibition against "solicit[ing] for commercial purposes."

Determining whether the Association has demonstrated a "credible threat of prosecution" is a more difficult matter. The likelihood of prosecution turns, not only, on an assessment of whether the statute prohibits the proposed activities; but, also, on whether the authorities are inclined to prosecute violators.

One would expect that, ordinarily, the inclination to prosecute will be directly proportional to the flagrancy of the violation. However, in cases where the prosecutor believes that the statute in question is unconstitutional, the prosecutor's duty to enforce the statute may be trumped by the obligation to obey the Constitution. Consequently, the more blatantly unconstitutional a statute may be, the less likely it is to be enforced. That diminished prospect of enforcement, in turn, reduces the likelihood that anyone will have standing to challenge the statute. The resulting paradox is that laws may remain on the books precisely because they are patently unconstitutional. See Sanger v. Reno, 966 F.Supp. 151, 162 (E.D.N.Y.1997) (finding plaintiff had no standing to challenge a ban on abortion counseling over the Internet because the Attorney General said that she would not enforce the law).

On the other hand, allowing parties who may be attracted by the lure of an easy award of attorneys' fees to bring lawsuits challenging statutes that are almost certain not to be enforced produces an equally unpalatable result. It ignores the constitutional requirement of a "case and controversy" and encourages needless litigation that wastes judicial resources and the resources of the litigants.

In this case, the dilemma of choosing between these alternatives is partially mitigated by the fact that the Attorney General does not concede that § 38–2–6 is unconstitutional. On the contrary, he defends the statute's constitutionality.

The attack on the Association's standing rests entirely on the contention that prosecution is unlikely because, in former Attorney General Pine's opinion, the Association's proposed activities would not violate § 38–2–6. However, there are several reasons why a "credible threat of prosecution" exists, despite that opinion.

First, it is not entirely clear whether that opinion is shared by Attorney General Whitehouse. As already noted, he has said nothing about the statute's applicability or his intentions with respect to enforcement. In addition, there is no way to determine whether the same position might be taken by some future Attorney General.

Indeed, the threat of future prosecution becomes quite real when one considers that there is ample reason for concluding that the Association's proposed use of the information to solicit members and to market its services, in fact, would violate the statute. Such a use appears to fall squarely within the statutory prohibition against using information obtained from public records to "solicit for commercial purposes."

On the other hand, the Association has failed to establish the existence of any credible threat that it would be prosecuted for compiling data from tax assessors' offices and making the data available to its members. It is not clear what provision of § 38–2–6 the Association believes would proscribe such activity. To the extent that the Association is referring to the prohibition against using information obtained from public records to "obtain a commercial advantage *over the party furnishing that information to the public body,*" § 38–2–6 (emphasis added), its challenge is baseless. There is no suggestion that the Association plans to use this data in order to obtain any commercial advantage over the individual taxpayers who are required to submit it. Nor is there any other discernible basis upon which the statute reasonably could be construed to prohibit the compilation of such data.

In short, insofar as its proposed use of data identifying real estate licensees is concerned, the Association has standing to

challenge the statute's prohibition against using public records information to solicit for commercial purposes. But, the Association has failed to establish standing to challenge any other provision of the statute or the statute's applicability to the proposed compilation of tax data.

## II. *Constitutionality of the Prohibition Against Commercial Solicitation*

■ As already noted, the solicitation of business is a form of commercial speech. *See Morales,* 990 F.2d at 222. Consequently, it is entitled to, at least, some measure of First Amendment protection. *See United States v. Edge Broad. Co.,* 509 U.S. 418, 426, 113 S.Ct. 2696, 2703, 125 L.Ed.2d 345 (1993) (commercial speech is protected by the First Amendment but "the Constitution . . . affords a lesser protection to commercial speech than to other constitutionally guaranteed expression"). *See also 44 Liquormart v. Rhode Island,* 517 U.S. 484, 507, 116 S.Ct. 1495, 1510, 134 L.Ed.2d 711 (1996) (plurality opinion) (commercial speech is protected by the First Amendment but under a "less than strict standard"). As long as commercial speech is "not false or deceptive and does not concern unlawful activities [it] . . . may be restricted only in the service of a substantial interest, and only through means that directly advance that interest." *Zauderer v. Office of Disciplinary Counsel. of Supreme Court of Ohio,* 471 U.S. 626, 638, 105 S.Ct. 2265, 2275, 85 L.Ed.2d 652 (1985).

Since 1980, the constitutionality of governmental regulations limiting commercial speech has been determined in accordance with a four-part test articulated by the Supreme Court in *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York,* 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980). *Central Hudson* requires consideration of the following factors:

(1) Whether the speech concerns a lawful activity and is not misleading;

(2) Whether the governmental interest asserted as a justification for the regulation is substantial;

(3) Whether the regulation directly advances that interest; and

(4) Whether the regulation is no more extensive than necessary to serve that interest.

*Id.*

■ In this case, it is clear that the proposed speech concerns a lawful activity and there is no suggestion that it is misleading. Therefore; the State must shoulder the burden of demonstrating that the regulation is narrowly tailored to directly advance a substantial governmental interest. *See Bolger,* 463 U.S. at 68–69, 71 n. 20, 103 S.Ct. at 2881, 2883 n. 20; *United Reporting Publ'g Corp. v. California Highway Patrol,* 146 F.3d 1133, 1140 (9th Cir.1998), *aff'g United Reporting Publ'g Corp. v. Lungren,* 946 F.Supp. 822, 826 (S.D.Cal.1996). Here the State has failed to carry that burden.

Rhode Island clearly has a legitimate and substantial interest in protecting the privacy rights of its citizens by establishing appropriate limitations on access to and/or the use of personal information that citizens are compelled to furnish to governmental agencies. All citizens have a right to privacy that includes the right "to be secure in their persons, houses, papers and effects," U.S. Const. amend. IV, and a concomitant right to informational privacy. It is true that the state may make limited intrusions into individual privacy by requiring the submission of personal information necessary to achieve some specific governmental purposes. However, that does not entitle others to obtain that information against the wishes of the individual providing it. Such an entitlement would be tantamount to indirectly using the state's coercive power as a tool for compelling the involuntary disclosure of private information under circumstances where there is no justification for overriding an individual's privacy interests.

■ Here though, the Attorney General has failed to articulate the State's interest in protecting the privacy of its citizens as a justification for the limitations contained in § 38–2–6. Nor has he explained how the statute serves that interest or why that interest could not be equally well served by excluding private or proprietary information from the Act's definition of "public records." Indeed, the Act already contains a number of exclusions that obviously are designed to protect individual privacy rights. See R.I.Gen.Laws § 38–2–2(4)(i)(A)(II) (excluding, among other things, child custody and adoption records, trade secrets, tax returns, and records of individual test scores on professional certification and licensing examinations).

Once information has been denominated as a "public record" the State cannot constitutionally limit its use for legitimate commercial purposes unless the limitation can be justified under the *Central Hudson* test. Absent such justification, attempts to prohibit the use of public records for solicitation purposes consistently have been held to violate First Amendment guarantees. *See, e.g., United Reporting Publ'g Corp.*, 146 F.3d at 1140; *Speer v. Miller*, 15 F.3d 1007, 1010 (11th Cir.1994) (affirming injunction against Georgia statute prohibiting inspection of police records for commercial solicitation); *Morales*, 990 F.2d at 222.

■ Because § 38–2–6's blanket prohibition against using public information to solicit for commercial purposes has not been justified under the *Central Hudson* test, it is unconstitutional. However, that does not necessarily render the entire section unconstitutional. The Rhode Island Public Records Act includes a severability provision which states: "[i]f any provision of this chapter is held unconstitutional, the decision shall not affect the validity of the remainder of this chapter ..." R.I.Gen. Laws § 38–2–12. The anti-solicitation provision is severable because it can operate independently from the remainder of § 38–2–6; and, because there is no indica-

tion that the Rhode Island General Assembly would have failed to enact the remainder of the statute without that provision. *See Buckley v. Valeo*, 424 U.S. 1, 108, 96 S.Ct. 612, 677, 46 L.Ed.2d 659 (1976) (quoting *Champlin Refining Co. v. Corporation Comm'n*, 286 U.S. 210, 234, 52 S.Ct. 559, 565, 76 L.Ed. 1062. (1932)) (holding that unless it is evident that the legislature would not have enacted the valid provision without the invalid provision, "the invalid part may be dropped if what is left is fully operative as a law"); *Rhode Island Federation of Teachers, AFL—CIO v. Norberg*, 630 F.2d 855 (1st Cir.1980). *See also Baird v. Eisenstadt*, 429 F.2d 1398, 1399 (1st Cir.1970) (striking the word "exhibits" from a statute making it a crime if a person "sells, lends, gives away, exhibits or offers to sell, lend, or give away ... [contraceptives]"). Because the Act includes a severability provision; and because § 38–2–6 remains fully operative without the clause prohibiting the use of public information for commercial solicitation, the remainder of the statute is unaffected.

### *Conclusion*

For all of the foregoing reasons, the plaintiff's Motion for Summary Judgment declaring the provision of § 38–2–6 that prohibits the use of public information "to solicit for commercial purposes" to be unconstitutional and enjoining its enforcement, is granted and the Defendant's Motion to Dismiss is denied.

In all other respects, the plaintiff's motion for summary judgment is denied and the defendant's motion to dismiss is granted.

It is so ORDERED.