

OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS
JOHN CORNYN

March 12, 1999

The Honorable Richard J. Miller
Bell County Attorney
P.O. Box 1127
Belton, Texas 76513

Opinion No. JC-0022

Re: Constitutionality of section 38.12(d)(2)(C) of the Penal Code, which prohibits an attorney from making a direct-mail solicitation of a criminal defendant within thirty days of his arrest (RQ-1223)

Dear Mr. Miller:

You have requested our opinion regarding the constitutionality of that portion of the barratry statute, section 38.12 of the Penal Code, that prohibits an attorney from making a direct-mail solicitation of a criminal defendant within thirty days of his arrest or the issuance of a summons. Subsection (d) of section 38.12 provides, in relevant part:

> (d) A person commits an offense if the person:
>
> (1) is an attorney, chiropractor, physician, surgeon, or private investigator licensed to practice in this state or any person licensed, certified, or registered by a health care regulatory agency of this state;
>
> (2) with the intent to obtain professional employment for himself or for another, sends or knowingly permits to be sent to an individual who has not sought the person's employment, legal representation, advice, or care a written communication that:
>
> (A) concerns an action for personal injury or wrongful death or otherwise relates to an accident or disaster involving the person to whom the communication is addressed or a relative of that person and that was mailed before the 31st day after the date on which the accident or disaster occurred;
>
> . . . .
>
> (C) concerns an arrest of or issuance of a summons to the person to whom the communication is addressed or a relative of that

person and that was mailed before the 31st day after the date on which the arrest or issuance of the summons occurred.

TEX. PEN. CODE ANN. § 38.12(d) (Vernon 1994 & Supp. 1999).

The legislature substantially rewrote the Texas barratry statute in 1993. Almost immediately thereafter, a number of individuals challenged its validity. In *Moore v. Morales*, 843 F.Supp. 1124 (S.D. Tex. 1994), *rev'd in part*, 63 F.3d 358 (5th Cir. 1995), *cert. denied sub nom., Ventura v. Morales*, 516 U.S. 1115 (1996), a federal district court held that several portions, including subsections (d)(2)(A) and (d)(2)(C), were unconstitutional and enjoined their enforcement. The court reasoned that, under the Supreme Court's decision in *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980), the state had not met the burden of justifying its ban on this type of commercial speech. The state chose to appeal only that part of the district court's ruling that barred the state from imposing a thirty-day ban on direct-mail solicitation of accident victims and their families. During the pendency of the appeal, the Supreme Court rendered its decision in *Florida Bar v. Went for It, Inc.*, 515 U.S. 618 (1995). In that case, the Court considered the validity of a rule of the State Bar of Florida that prohibited attorneys "from sending targeted direct-mail solicitations to victims and their relatives for 30 days following an accident or disaster." *Id.* at 620.

The Supreme Court's 5-4 decision in *Went for It* represents something of a departure from the constitutional protection first afforded attorney advertising in *Bates v. State Bar of Arizona*, 433 U.S. 350 (1977), wherein the Court invalidated a state bar rule imposing a blanket ban on attorney advertising in the public media, and affirmed in *Shapero v. Kentucky Bar Ass'n*, 486 U.S. 466 (1988), where the Court struck down a state's broad ban on direct mail solicitations by attorneys. In *Went for It*, the Court employed the test first announced in *Central Hudson* to determine the validity of prohibitions on commercial speech that is neither misleading nor concerns unlawful activity: 1) the government must assert a substantial interest in support of its regulation; 2) it must demonstrate that the regulation directly and materially advances that interest; and 3) the regulation must be "narrowly drawn." *Went for It*, 515 U.S. at 624.

In *Went for It*, the State Bar of Florida asserted that its imposition of a thirty-day moratorium on direct mail solicitations of accident victims and their families was designed to protect "the privacy and tranquility of personal injury victims and their loved ones against intrusive, unsolicited contact by lawyers," and, in so doing, to enhance the reputation of the legal profession. *Id.* The Court concluded that the regulation satisfied the first requirement of the *Central Hudson* test, noting that it "is an effort to protect the flagging reputations of Florida lawyers by preventing them from engaging in conduct that . . . 'is universally regarded as deplorable and beneath common decency because of its intrusion upon the special vulnerability and private grief of victims or their families.'" *Id.* at 625 (quoting *In re Anis*, 599 A.2d 1265, 1270 (N.J. Sup.Ct. 1992)).

With regard to the second prong of the *Central Hudson* test, the Court observed that the Florida Bar had submitted a 106-page summary of a two-year study of lawyer advertising and

solicitation, both statistical and anecdotal. That evidence demonstrated, to the Court's satisfaction, that the intrusion targeted by the prohibition resulted not from a lawyer's learning about an accident, but from his confronting victims or relatives "while wounds are still open." *Id.* at 630. The Bar, said the Court, is concerned not merely with a recipient's "offense" at receiving such information, "but with the demonstrable detrimental effects that such 'offense' has on the profession it regulates." *Id.* at 631. Furthermore, the harm which the prohibition seeks to alleviate "is as much a function of simple receipt of targeted solicitations within days of accidents as it is a function of the letters' contents." *Id.* The Court, "[a]fter scouring the record," was "satisfied that the ban . . . targets a concrete, nonspeculative harm." *Id.* at 628-29.

As to the third requirement of *Central Hudson*, the Court noted that, in imposing limits on commercial speech, a state need not use the "least restrictive means" available to effect its purpose. Rather, what is required is a "fit" between the government's ends and the means chosen to accomplish those ends. *Id.* at 632. The Court could not easily imagine the contours of a regulation that might distinguish between victims on the basis of "the severity of their pain or the intensity of their grief." *Id.* at 633. In addition, the Court found, the ban exists only for a brief period, and during that time there are many other ways for injured persons "to learn about the availability of legal representation." *Id.* Accordingly, the Court concluded that the "palliative devised by the Bar to address these harms is narrow both in scope and in duration." *Id.* at 635.

Only two months after the Supreme Court's opinion in *Went for It*, the court of appeals rendered its decision in *Moore v Morales*, 63 F.3d 358 (5th Cir. 1995). As we have noted, only one portion of the Texas barratry statute was before the court: "the 30-day ban on solicitation of accident victims and their families." *Id.* at 360. The court, observing that the Florida Bar rule at issue in *Went for It* was "nearly identical" to the Texas statute, held that case to be controlling, and accordingly, reversed the decision of the district court. Thus, the present status of section 38.12(d)(2)(C) of the Penal Code—banning direct mail solicitations to a criminal defendant and his relatives within thirty days of his arrest—is that it has been declared, in an unappealed decision of one federal district court in Texas, to contravene the First Amendment's protection for commercial speech.

We begin with the presumption of constitutionality that must be accorded any legislative act. TEX. GOV'T CODE ANN. § 311.021(1) (Vernon 1998); *Proctor v. Andrews*, 972 S.W.2d 729, 735 (Tex. 1998); *Smith v. State*, 898 S.W.2d 838, 846-47 (Tex. Crim. App. 1995) (en banc). But in this instance we are not writing on a clean slate. Aside from the federal district court's ruling on subsection (d)(2)(C), we must also consider the decision of the court of appeals for the fourth circuit in *Ficker v. Curran*, 119 F.3d 1150 (4th Cir. 1997). There, the court was presented with a state legislative enactment—virtually identical to the Texas provision—that required attorneys to "wait thirty days after . . . [a] criminal charge or traffic charge before mailing out targeted solicitations to victims or arrestees and their relatives." *Id.* at 1151. *Cf. United Reporting Pub. Corp. v. California Highway Patrol*, 146 F.3d 1133 (9th Cir. 1998) (finding invalid a California statute that limited only commercial users' access to arrestee addresses), *cert. granted sub nom., Los Angeles Police Dept. v. United Reporting Pub. Corp.*, 119 S.Ct. 901 (1999).

The court of appeals made clear its view that *Went for It* "expressed no intention to abridge previously-recognized First Amendment advertising rights outside the accident victim context." *Ficker*, 119 F.3d at 1153. "Both the First Amendment interests and the government interests" in *Ficker*, said the court, "differ materially from those" in *Went for It*, "and accordingly dictate a different outcome." *Id.* at 1155. Recognizing in the abstract the substantiality of the state's interests in regulating lawyer advertising, the court nonetheless concluded that the thirty-day ban on direct-mail solicitation of criminal defendants did not directly or materially advance those interests. *Id.* at 1153. In the first place, the court declared, the Supreme Court in *Went for It*

> rested its conclusion largely on the principle that the privacy of accident victims and wrongful death clients deserves protection in order to provide them with a period to cope with their grief before being asked to redress an emotional loss . . . . The Court recognized that this invasion of "privacy and tranquility" during "personal grief in times of trauma" was an entirely "different kind of intrusion" from an attorney's sifting through public records seeking prospective clients.

*Id.* The majority in *Went for It* also determined that "crass intrusions on the healing process reflect poorly on the legal profession." *Id.* By contrast, said the *Ficker* court, "[w]hile a criminal or traffic defendant may be shaken by his arrest, what he needs is representation, not time to grieve." *Id.*

The second factor that distinguishes criminal defendants from accident victims is the need to act in a speedy fashion. As the court noted, while accident victims generally have three years to file a claim, "[d]efendants can lose rights if unrepresented for thirty days after arrest." *Id.* Third, a criminal defendant's privacy concerns are substantially different from those of an accident victim. Whereas the latter—or their relatives—"can choose to avoid public scrutiny of his private affairs by not filing a suit or by settling quietly, the criminal arrestee is in the legal system involuntarily and has already had his privacy compromised before a solicitation letter is ever sent." *Id.* at 1156. Finally, a criminal or traffic defendant has a right to counsel under the Sixth Amendment. The court observed that, "when the state itself is prosecuting a defendant, it cannot lightly deprive its opponent of critical information which might assist the exercise of even a qualified right." *Id.* at 1155. Since criminal defendants are in litigation against the state, "the effect of the law, if not its intent," is to make it more difficult for them to obtain legal representation. *Id.* Based upon these considerations, the court of appeals held that a "thirty day ban on attorney advertising to defendants charged with crimes and incarcerable traffic offenses cannot stand." *Id.*

In our opinion, the court's decision in *Ficker* is highly persuasive. Although the decision is not binding on Texas courts, this office has in the past ventured to predict constitutional outcomes on the basis of a single federal case from another circuit. *See, e.g.*, Tex. Att'y Gen. Op. No. MW-326 (1981). After considering both the unappealed federal district court decision in *Moore*, and particularly the appellate court's opinion in *Ficker*, we believe section 38.12(d)(2)(C) of the Penal Code prohibiting an attorney from sending a direct mail solicitation to a targeted criminal defendant or his relatives within thirty days of his arrest, neither directly or materially advances a

substantial state interest nor is narrowly drawn as provided under *Central Hudson*, and thus contravenes the First Amendment to the United States Constitution.

## S U M M A R Y

A court would probably hold that section 38.12(d)(2)(C) of the Penal Code, which prohibits an attorney from sending a direct mail solicitation to a targeted criminal defendant or his relatives within thirty days of his arrest, fails to promote a substantial state interest under the test of *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980), and thus contravenes the First Amendment to the United States Constitution.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Prepared by Rick Gilpin
Assistant Attorney General