**Diane Messere MAGEE, Esquire, and Deborah A. Barclay, Esq., Plaintiffs,**

v.

**UNITED STATES of America, Janet Reno, in her official capacity as Attorney General of the United States of America, and Margaret Curran,[1] in her official capacity as Attorney for the United States of America, District of Rhode Island, Defendants.**

**C.A.No. 98–073–T.**

United States District Court, D. Rhode Island.

May 2, 2000.

Diane Messere Magee, Warren, RI, Deborah A. Barclay, West Warwick, RI, for Plaintiffs.

---

1. Margaret Curran is the successor to Sheldon Whitehouse who was United States Attorney for the District of Rhode Island when this action was filed.

Thomas E. Caballero, U.S. Dept. of Justice, Washington, DC, for Defendants.

### Memorandum and Order

TORRES, Chief Judge.

Attorneys Diane Messere Magee and Deborah A. Barclay (the "Plaintiffs") brought this action to declare unconstitutional and to enjoin enforcement of Section 4734 of the Balanced Budget Act of 1997 (42 U.S.C. § 1320a–7b), which makes it a crime to counsel an individual to dispose of assets in order to become eligible for Medicaid benefits.

The plaintiffs contend that Section 4734 violates their First Amendment rights to freedom of speech and they have moved for summary judgment. The United States does not dispute that Section 4734 is "plainly unconstitutional." (Defs.' Mem. in Opp'n to Summ. J., at 3.) Rather, although it has not moved to dismiss, the United States argues that this Court lacks subject matter jurisdiction because there is no case or controversy. *See* U.S. Const. Art. III, § 2.

Because I agree that no case or controversy exists, the Plaintiffs' motion for summary judgment is denied.

### Background

In 1988, Congress enacted what now is codified as 42 U.S.C. § 1396p(c). That section provides that individuals who transfer assets in order to receive Medicaid benefits are ineligible for those benefits for a period of time that depends upon the value of the assets transferred.

Section 217 of the Health Insurance Portability and Accountability Act ("HIPAA") of 1996 added certain criminal penalties for such transfers. Section 217 soon was dubbed the "Granny Goes to Jail Act" and became the object of much criticism. Congress responded by enacting Section 4734, which eliminated the criminal penalties against persons transferring the assets but made it a crime for others to

counsel a person to make such a transfer. Specifically, Section 4734 makes it a misdemeanor to

"knowingly and willfully counsel[ ] or assist[ ] an individual to dispose of assets (including by any transfer in trust) in order for the individual to become eligible for medical assistance under [Medicaid] if disposing of the assets results in the imposition of a period of ineligibility for such assistance ..."

42 U.S.C. § 1320a–7b.

Section 4734 was enacted despite a memorandum from the Congressional Research Service ("CRS") advising that "[t]o the extent that the provision would prohibit counseling about legal activities, a court would seem likely to declare it unconstitutional."

The plaintiffs claim that Section 4734 violates their First Amendment rights to freedom of speech as well as their Fifth Amendment Due Process rights. One month after the commencement of this action, United States Attorney General Janet Reno wrote to the presiding officers of both houses of Congress informing them that the Department of Justice would not enforce or defend the constitutionality of Section 4734 because "the counseling prohibition in that provision is plainly unconstitutional under the First Amendment and because the assistance prohibition is not severable from the counseling prohibition." (Letters from Janet Reno to House Speaker Newt Gingrich and Senate President Al Gore, Jr., p. 1 (March 11, 1998).) Attorney General Reno also instructed all federal prosecutors to refrain from investigating or prosecuting alleged violations of Section 4734.

The United States argues that, in light of the Attorney General's actions, there is no credible threat that the Plaintiffs will be prosecuted for violating Section 4734; and, therefore, the case or controversy that Article III requires as a prerequisite to subject matter jurisdiction is lacking.[2]

---

**2.** The fact that the Attorney General did not     act until after this action was brought does

### The Summary Judgment Standard

Summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

In this case, the facts are undisputed. Moreover, the United States, itself, concedes that Section 4734 is unconstitutional.

The sole issue is whether there is a case or controversy that confers jurisdiction on this Court to award the requested relief.

### Discussion

#### The Case or Controversy Requirement

■ Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." The case or controversy requirement also is part of the "blend of constitutional requirements and prudential considerations" from which the still amorphous doctrine of standing is derived. *New Hampshire Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 13 (1st Cir.1996)(quoting *Valley Forge Christian Coll. v. Americans United for Separation of Church and State*, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)). Put another way, a court's power to entertain a suit depends upon the existence of a real and substantial dispute appropriate for judicial determination, *see Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937), and the participation of a party that personally has sustained or is likely to sustain an injury that is traceable to the conduct in question. *See Valley Forge Christian Coll.*, 454 U.S. at 472, 102 S.Ct. 752; *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Gardner*, 99 F.3d at 12.

Not every dispute presents a case or controversy. *See Gardner*, 99 F.3d at 13. In determining whether a suit presents a real case or controversy or only an abstract question that is not justiciable in a federal court, the relevant inquiry is whether the "conflicting contentions of the parties ... present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979)(internal citation omitted).

In order to establish standing to challenge the validity of a statute, a plaintiff "must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Id.* If the statute provides for criminal penalties, "it is not necessary that [the plaintiff] first expose himself to actual arrest or prosecution." *Id.* It is sufficient to show that "a credible threat of prosecution" exists. *Id.* (citing *Doe v. Bolton*, 410 U.S. 179, 188, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973)).

In such cases, the requisite injury, ordinarily, is "the injury which attends the threat of enforcement." *Gardner*, 99 F.3d at 13. However, when First Amendment rights are at stake, "an actual injury can exist when the plaintiff is chilled from exercising her right to free expression or forgoes expression in order to avoid enforcement consequences." *Gardner*, 99 F.3d at 13. *See also New York State Bar Assoc. v. Reno*, 999 F.Supp. 710, 715 (E.D.N.Y.1998); *Sanger v. Reno*, 966 F.Supp. 151, 161 (E.D.N.Y.1997).

In any event, whether the alleged injury consists of potential criminal penalties or self-censorship, it must arise from a "credible" threat of prosecution. In order to be deemed credible, the threat must be more than "imaginary or speculative." *Babbitt,*

---

not establish the existence of a case or controversy because "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Steffel v. Thompson*, 415 U.S. 452, 459 n. 10, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974).

442 U.S. at 298, 99 S.Ct. 2301 (quoting *Younger v. Harris,* 401 U.S. 37, 42, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)). Unfounded subjective fears will not suffice. *See Gardner,* 99 F.3d at 14. Thus, the Plaintiff bears the burden of establishing that its fear of prosecution is "objectively reasonable." *Id.*

In this case, the plaintiffs have failed to establish any credible threat of prosecution. On the contrary, the Attorney General, who is charged with enforcing Section 4734, has expressed her unequivocal opinion that the statute is unconstitutional, and she has communicated to Congress her intention not to defend or enforce it. Moreover, she has directed the various U.S. Attorneys under her command not to investigate or prosecute alleged violations. Indeed the plaintiffs have failed to cite to a single case in which anyone has been prosecuted for violating Section 4734.

In these respects, this case is readily distinguishable from *Rhode Island Ass'n of Realtors, Inc. v. Whitehouse,* 51 F.Supp.2d 107 (D.R.I.), *aff'd* 199 F.3d 26 (1st Cir.1999). In *Whitehouse,* a Rhode Island Attorney General who was nearing the end of his term of office expressed the opinion that a state statute prohibiting the use of information obtained from public records for commercial solicitation was inapplicable to an association of realtors' proposal to compile tax assessors' records and sell the information to its members. Therefore, he disavowed any intention to prosecute the realtors. However, the Attorney General did not concede that the statute was unconstitutional. He merely expressed his opinion that the specific activity in which the realtors proposed to engage would not violate the statute. That left open the possibility of prosecution if the Attorney General determined that the plaintiff's activities exceeded the boundaries of the described activity. The threat of future prosecution was enhanced by the fact that there was considerable room for disagreeing with the Attorney General's opinion that the proposed conduct did not violate the statute and by the further fact that a successor Attorney General elected during the pendency of that lawsuit had not expressed his intentions with respect to enforcement. In short, the circumstances in *Whitehouse* provided far more reason to fear prosecution than is present in this case.

Although not cited by either party, the Court is aware of one district court decision addressing whether an attorney may maintain an action challenging the constitutionality of Section 4734. *New York State Bar Assoc. v. Reno,* 97–CV–1768 (E.D.N.Y. Sept. 22, 1998), *reported in* Gary Spencer, *Medicaid Counseling Law Struck in New York,* Nat'l L.J., Oct. 5, 1998, at A7 (declaring the statute unconstitutional and permanently enjoining its enforcement). In *New York State Bar Ass'n,* the Court found it unnecessary to determine whether a credible threat of prosecution existed because it concluded that an attorney's "ethical obligation ... to respect and uphold the law" created a potential for self-censorship that had a "chilling effect" on free speech. *See* Spencer, *supra,* at A7.

However, like self-censorship that is prompted by a fear of prosecution, self-censorship that stems from a desire to comply with the law must be subjectively felt and objectively reasonable. Here, there is no claim that the plaintiffs feel ethically constrained to obey Section 4734. On the contrary, they have made it clear that they believe Section 4734 to be unconstitutional. Moreover, the Attorney General, as the chief law enforcement officer responsible for upholding the laws, shares that belief and has disavowed any intention to prosecute alleged violations.

Because a lawyer's obligation to uphold the Constitution takes precedence over the obligation to uphold a statute; and, because all concerned agree that Section 4734 is unconstitutional, the plaintiffs have failed to establish an objectively reasonable subjective belief that Section 4734

prevents them from properly counseling their clients.

### Conclusion

For all of the foregoing reasons, I find that this case presents no case or controversy that would enable this Court to grant the requested relief. Therefore, the Plaintiffs' motion for summary judgment is denied and the Plaintiffs are directed to show cause, within thirty days, why this action should not be dismissed for lack of subject matter jurisdiction.

IT IS SO ORDERED.